In the Matter of the Arbitration between R. B. GANTT, Doing Business under the Name of SOUTHLAND SUPPLY COMPANY, Appellant, and FELIPE Y CARLOS HURTADO & CIA., LTDA., Respondent.

Argued April 22, 1948; decided May 21, 1948.

*Edward Jerome* and *Horace A. Teass* for appellant. I. The demand for arbitration is unenforcible according to the law of New York. (*Matter of Huxley,* 294 N. Y. 146.) II. The demand for arbitration is unenforcible by application of the

statutory law of North Carolina. (*Williams* v. *Manufacturing Co.*, 154 N. C. 205.) III. The principles of comity require the permanent restraint of this arbitration. (*Green* v. *E. Tenn. R. R. Co.*, 37 Ga. 456; *Titus* v. *Scantling*, 4 Blackf. [Ind.] 89; *Meacham* v. *Jamestown F. & C. R. R. Co.*, 211 N. Y. 346; *Hamlyn & Co.* v. *Talisker Distillery*, [1894]. A. C. 202; *Vitaphone Corp.* v. *Electrical Research Products, Inc.*, 166 A. 255; *Franklin Sugar Refining Co.* v. *Lipowicz*, 247 N. Y. 456; *Hamilton* v. *Home Ins. Co.*, 137 U. S. 370; *Westchester Mtge. Co.* v. *Grand Rapids & I. R. R. Co.*, 246 N. Y. 194; *Johnston* v. *Compagnie Generale Transatlantique*, 242 N. Y. 381; *McLean* v. *Hardin*, 56 N. C. 294.) IV. Sections 1 and 2 of article IV of the Constitution of the United States require permanent restraint of the arbitration demanded herein. (*Red Cross Line* v. *Atlantic Fruit Co.*, 264 U. S. 109; *Broderick* v. *Rosner*, 294 U. S. 629; *Bradford Elec. Light Co.* v. *Clapper*, 286 U. S. 145; *Cole* v. *Cunningham*, 133 U. S. 107.)

*Walter M. Hinkle, Irving I. Goldsmith* and *Robert G. Lind* for respondent. I. An arbitration clause covering future disputes is merely unenforcible at common law and is not void or invalid. (*Williams* v. *Manufacturing Co.*, 154 N. C. 205; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.*, 252 N. Y. 284; *Tobey* v. *Bristol County*, 23 Fed. Cas. 1313; *Matter of Webster* v. *Van Allen*, 217 App. Div. 219.) II. The courts of New York may, under the statutes of this State, properly take jurisdiction of controversies presented under an arbitration clause affecting future disputes which provides that they shall be arbitrated within the State of New York. (*Matter of Heyman, Inc.*, v. *Cole Co.*, 242 App. Div. 362; *Matter of Galban Lobo Co.* [*Haytian Amer. Sugar Co.*], 271 App. Div. 310; *Moyer* v. *Van-Dye-Way Corp.*, 126 F. 2d 339.) III. An agreement to arbitrate a dispute concerns the means for enforcing rights, and, therefore, concerns the law of remedies which is determined by the *lex fori*. (*Meacham* v. *Jamestown, F. & C. R. R. Co.*, 211 N. Y. 346; *Matter of Berkovitz* v. *Arbib & Houlberg*, 230 N. Y. 261.) IV. The New York statute does not violate the full faith and credit clause found in section 1 of article IV of the United States Constitution. (*M'Elmoyle* v. *Cohen*, 13 Pet. [U. S.] 312; *Order of Travelers* v. *Wolfe*, 331 U. S. 586.) V. The

New York statute does not violate the privileges and immunities clause found in section 2 of article IV of the United States Constitution. VI. The agreement is in writing and signed by the purported agents of the petitioner and of the respondent. Hence, the provisions of section 1449 of the Civil Practice Act have been complied with prima facie and petitioner is barred, since he makes this application as a matter of law, from raising the issue whether the said provisions have been complied with in fact. (*Schickler* v. *Penrod Co.*, 222 App. Div. 627; *Locke* v. *Pembroke*, 280 N. Y. 430.)

DESMOND, J. Petitioner Gantt is a North Carolina lumber dealer, using the business name of Southland Supply Company. Respondent Hurtado & Cia., Ltda., is a Nicaraguan partnership (or corporation) doing business in that Republic. In July, 1946, at High Point, North Carolina, an authorized representative of Hurtado made two written agreements with " Southland Supply Company ", the signatures of the latter being by W. O. Carter, who, in one of those agreements, styled himself " Manager " but whose authority to contract for petitioner Gantt is now disputed by the latter. Each of these July, 1946, writings called for the sale and delivery by Hurtado to " Southland Supply Company ", of large quantities of various kinds of tropical woods to be shipped from Nicaraguan ports, at prices f.o.b. those ports, to High Point. Each of those agreements called for the opening by the buyer, for the seller, of an irrevocable letter of credit, the place where such letter of credit was to be obtained not being stated. Both those July, 1946, agreements were modified in various respects by a third document, signed at High Point in September of that year by a representative of Hurtado and by " Southland Supply Company, W. O. Carter ". The September pact contained the first mention of arbitration, the language being: " Any controversy or claims arising out of or relating to this contract or the breach thereof shall be settled by arbitration in accordance with the rules of the Inter-American Commercial Arbitration Commission. This agreement shall be enforceable and judgment upon any award rendered by the arbitrators or a majority of them may be entered in any Court having jurisdiction. The arbitration shall be held in New York, N. Y."

Later in September, 1946, respondent Hurtado, asserting that there had been a violation of contract by Southland Supply Company (or Gantt), in the latter's alleged failure to set up the promised letter of credit, served on Southland a demand for arbitration before the Inter-American Commercial Arbitration Commission. Gantt did not reply to that demand, but commenced in Supreme Court, New York County, the present proceeding to restrain the proposed arbitration, alleging in his petition that Carter had signed the September, 1946, agreement without authority from him (Gantt). Petitioner first applied for a temporary order to restrain the arbitration pending a jury trial, which petitioner requested, of the preliminary question as to Carter's authority (see Civ. Prac. Act, § 1458). That motion was granted at Special Term but immediately afterwards, and before the jury trial could be held (it has not yet been held, we are informed) petitioner Gantt made a further motion, this time for a permanent stay of arbitration, on the ground that the arbitration clause was wholly void by the laws of North Carolina, where the paper in which it appears was signed, and that therefore, according to petitioner, he could not be compelled to enter into any arbitration, anywhere. Special Term denied that second motion, holding that the arbitration clause, in its specific declaration that any arbitration was to " be held in New York, N. Y." amounted to an unconditional consent by the parties to submit their contests to arbitration in New York State under New York arbitration procedures, and that, whether or not such an arbitration covenant could be enforced in North Carolina, it was enforcible under the law of the forum, i.e., New York. The Appellate Division, First Department, unanimously affirmed without opinion but granted petitioner Gantt leave to appeal to this court, certifying to us a question as to whether the order denying petitioner a permanent stay, was properly made.

We deal first with the question of the legality of the arbitration clause, since if it be entirely void, as petitioner argues, the case ends there. North Carolina has an arbitration statute (General Statutes of North Carolina, 1943, div. II, ch. 1, art. 45), but unlike our New York article 84 of the Civil Practice Act, the North Carolina enactment covers and enforces only agreements to submit *existing* controversies to arbitration. It does not mention at all the kind of arbitration covenant we have before us —

a covenant to arbitrate controversies thereafter arising — and so we turn (see *Tarpley* v. *Arnold,* 226 N. C. 679, 680) to the North Carolina case law to see whether the clause here under scrutiny is good, or bad, in North Carolina. Petitioner says it is totally void, for all purposes, under North Carolina law, but his reliance at this point seems to be entirely on the use of the word "void" in *Williams* v. *Branning Mfg. Co.* (154 N. C. 205). An examination of that decision, and a number of others in North Carolina's highest court, convinces us that North Carolina's common law does not declare such covenants to be nullities without any legal existence or effect, but merely refuses to compel parties to arbitrate thereunder (see *Williams* v. *Branning Mfg. Co.,* earlier appeal, 153 N. C. 7, 10; *Nelson* v. *Atlantic Coast Line R. R. Co.,* 157 N. C. 194, 202, and particularly *Tarpley* v. *Arnold, supra,* 226 N. C. at p. 680). The second *Williams* case (*supra*), itself, as well as *Tarpley* v. *Arnold* (*supra*), and others of the above-cited North Carolina cases, plainly show that such agreements are given some effect by the North Carolina courts, since awards based thereon may be the subject of suits and defenses. In other words, North Carolina's common law as to arbitration is substantially the same as was the common law in New York before our Legislature dealt with the whole matter of arbitration, and as it was, and is, in other States (see *Haggart* v. *Morgan,* 5 N. Y. 422; *President, M. & Co. of D. & H. Canal Co.* v. *Pennsylvania Coal Co.,* 50 N. Y. 250, 264; *Matter of Berkovitz* v. *Arbib & Houlberg,* 230 N. Y. 261, 271; *Matter of Marchant* v. *Mead-Morrison Mfg. Co.,* 252 N. Y. 284, 293; *Red Cross Line* v. *Atlantic Fruit Co.,* 264 U. S. 109, 121). Having thus found that the arbitration treaty we are passing on was not void but unenforcible only, at the place where made, we turn to the question of whether it may be compulsorily enforced by the courts of New York. The place of performance of the arbitration section, though not of the other parts of the September agreement, was to be New York. The New York statute (Civ. Prac. Act, art. 84) provides complete compulsion and full enforcement, as to such promises to arbitrate future-arising disputes. It is the law of the forum which, traditionally, controls as to remedies (*M'Elmoyle* v. *Cohen,* 13 Pet. [U. S.] 312; *Franklin Sugar Refining Co.* v. *Lipowicz,* 247 N. Y. 465, 469;

*Mertz* v. *Mertz,* 271 N. Y. 466, 473; Restatement, Conflict of Laws, § 585). "An agreement that all differences arising under a contract shall be submitted to arbitration relates to the law of remedies, and the law that governs remedies is the law of the forum" wrote Judge CARDOZO in his concurring opinion in *Meacham* v. *Jamestown, F. & C. R. R. Co.* (211 N. Y. 346, 352.) The rule thus expressed is well settled by other decisions (*Red Cross Line* v. *Atlantic Fruit Co.,* 264 U. S. 109, 124, *supra*; *Marine Transit Corp.* v. *Dreyfus,* 284 U. S. 263, 277; *The Atlanten,* 250 F. 935, 937, affd. 252 U. S. 313; *Matter of Berkovitz* v. *Arbib & Houlberg, supra,* 230 N. Y. at p. 270; *Gilbert* v. *Burnstine,* 255 N. Y. 348, 354) and text writers (2 Beale on Conflict of Laws [1935], p. 1158). It may be that, in other States in which there might be future litigation over any award here made, the law in this respect is different. But these parties solemnly promised to arbitrate their controveries in New York, and by case and statute the law of New York then was, and now is, that such an agreement is " a consent of the parties thereto to the jurisdiction of the supreme court of this state to enforce such contract or submission " (Civ. Prac. Act, § 1450 — see *Matter of Zimmerman* v. *Cohen,* 236 N. Y. 15; *Gilbert* v. *Burnstine, supra,* 255 N. Y. at p. 354).

Petitioner insists that all this has been changed by *Order of Travelers* v. *Wolfe* (331 U. S. 586). We, however, do not think that decision wipes out the old rule that remedies, including arbitration, are regulated by the law of the forum. The *Wolfe* decision (*supra*), as the Supreme Court opinions show, deals with a special situation. The majority opinion itself (at p. 607) says that the court was dealing with a " comparatively narrow issue " and states a distinction between the cause under review and *M'Elmoyle* v. *Cohen* (*supra*). *Order of Travelers* v. *Wolfe* (*supra*) was an action brought by an Ontario citizen in a South Dakota court for insurance benefits due because of the death of a South Dakota citizen whose life had been insured by the defendant order, an Ohio fraternal society of which the deceased had been a member. A statute of Ohio specifically authorized such a fraternal order to limit the time within which suits could be brought on its certificates. The defendant association had limited the time to six months after accrual, but a South Dakota

statute allowed such suits to be brought within six years. The Supreme Court held, as we read the majority opinion, not that the law of the forum (South Dakota) would not, ordinarily, be applicable as to remedies, but only that, under the peculiar set-up of a mutual benefit society, an agreement by its members, expressed in a by-law provision limiting the time for instituting actions, was so much a part of the members' mutual engagements with one another, that such a by-law would prevail over a statute, otherwise applicable, of the State wherein the suit was brought.

What we have said herein will, we think, serve as an answer to petitioner's contention that the refusal of the permanent stay of this arbitration deprives him of the privileges and immunities he is entitled to under section 2 of article IV of the United States Constitution and his further contention that to allow the arbitration to proceed in New York will be to refuse full faith and credit to the laws of North Carolina. The pertinent North Carolina law, as we have seen, goes only so far as to deny enforcibility in its courts to such an arbitration clause, while these parties covenanted that they would, in case of dispute, go into New York State and there submit to an arbitration under the New York statutes; the New York statutes fully enforce such agreements and provide court machinery for compelling the parties to go through with their own arrangements for the settlement of their differences in a private tribunal of their own selection, rather than in a court of law.

The other objection in point of law (briefly referred to at the beginning of this opinion) which petitioner enters against the maintenance of this arbitration, is based on the fact that the agreements were, at least in form, not signed by petitioner but by W. O. Carter, styling himself the " Manager " of " South land Supply Company ". The dispute of fact as to whether Carter was authorized so to contract, was, as we have said, set down, on petitioner's application, for a jury trial. But petitioner goes further and says that a New York statute (Civ. Prac. Act, § 1449) makes entirely illegal in New York an arbitration agreement not signed by the parties themselves. Section 1449 says, in part: " A contract to arbitrate a controversy thereafter arising between the parties must be in writing." Obviously, this contract was in writing. There is no statutory pro-

hibition, in our statute, of signature by an agent, nor any command that, if an agent sign, his authority must be shown in the agreement. We think petitioner's rights are fully protected by the Special Term order sending to a jury trial the question of whether or not Carter was in fact authorized to commit petitioner to the arbitration of such differences as might arise. Much is said in the briefs concerning the second sentence, not applicable here, of section 1449, which second sentence reads: " Every submission to arbitrate an existing controversy is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent." The case here under review does not justify us in construing that second sentence of section 1449, or analyzing the differences in language as between the first and second sentences. We see no reason for thinking that the requirement in the first sentence of " writing " means anything more than the similar requirement in the Federal Arbitration Act (U. S. Code, tit. 9, § 2) of " a written provision  *  *  * to settle by arbitration a controversy thereafter arising ".

The order should be affirmed, with costs and the certified question answered in the affirmative.

LOUGHRAN, Ch. J., LEWIS, CONWAY, THACHER, DYE and FULD, JJ., concur.

Order affirmed, etc.