■ In the Matter of the Arbitration between I. S. JOSEPH COMPANY, INC., Appellant, and TOUFIC ARIS & FILS, Respondent.—Judgment, Supreme Court, New York County, entered May 11, 1976, dismissing petition for stay of arbitration and granting cross petition to direct the parties to proceed to arbitration is affirmed, with $40 costs and disbursements to respondents. The stay pending appeal by order of this court dated August 26, 1976 is vacated. Petitioner seller (hereinafter "Joseph"), based in Minnesota, and respondent buyer (hereinafter "Toufic"), based in France and Lebanon, entered into an oral agreement for the sale by Joseph to Toufic of a quantity

of grain. Each side promptly sent the other a telex confirmation note saying "we are pleased to confirm having bought from you" and "we confirm the following sale to you," respectively. For the most part, the terms stated in the two confirmations were in agreement. There were some minor differences—notably, Toufic's telex provided for delivery to a vessel in New Orleans while Joseph's telex provided for delivery to buyers' vessel in any United States gulf port excluding Brownsville, Texas. Both confirmations incorporated by reference a standard contract of the North American Export Grain Association ("NAEGA"). The NAEGA contract contains a broad arbitration clause providing for arbitration of any controversy in New York under the laws of the State of New York and consenting to jurisdiction of the courts of the State of New York in connection therewith. The clause subjected to arbitration "any controversy or claim arising out of, in connection with or relating to this contract, or the interpretation, performance or breach thereof." In our view there was a valid agreement to arbitrate. Plainly each side thought it had a contract and was not just negotiating for one. And plainly each side agreed that any dispute arising out of the agreement would be arbitrated in New York. Joseph suggests that the matter is governed by the laws of the State of Louisiana because that is the place of performance designated by Toufic and is thus the State "which has the most significant contacts with the matter in dispute." *(Rubin v Irving Trust Co.,* 305 NY 288, 305; *Auten v Auten,* 308 NY 155, 160; *Haag v Barnes,* 9 NY2d 554, 559.)* It is by no means clear to us that the law of Louisiana is significantly different from that of New York with respect to the issues in the present case. But in any event, we think the law of New York governs. For what we are concerned with here is not the portion of the contract that calls for delivery of the grain but rather the portion that calls for arbitration, and as to that, it is clear that New York has the most significant contacts. The parties agreed that the arbitration would be held in New York, under the laws of the State of New York, and enforceable by the courts of the State of New York. Furthermore, " '[a]n agreement that all differences arising under a contract shall be submitted to arbitration relates to the law of remedies, and the law that governs remedies is the law of the forum' wrote Judge Cardozo in his concurring opinion in *Meacham v. Jamestown, F. & C. R. R. Co.* (211 N. Y. 346, 352.) The rule thus expressed is well settled by other decisions." *(Matter of Gantt [Hurtado & Cia.],* 297 NY 433, 439.)* Subdivision (1) of section 1-105 of the Uniform Commercial Code provides: "Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state." Here the parties have agreed that the law of New York shall govern as to arbitration and, at least as to the provision for arbitration, the transaction bears a reasonable relation to New York. The majority of the Bench is in agreement that a valid agreement to arbitrate exists between the parties. Capozzoli and Yesawich, JJ., are of the opinion that there was a valid agreement for the sale of grain; that the agreement to arbitrate is simply one of the terms of that valid agreement; and that if there are any differences between the two confirmations, neither "materially alters" the other and thus the contract is valid under section 2-207 (subd [2], par [b]) of the Uniform Commercial Code. Kupferman and Silverman, JJ., are of the opinion that whether or not there was a valid agreement for the sale of grain, the provision for arbitration is separable and is a valid agreement to

arbitrate under *Matter of Weinrott (Carp)* (32 NY2d 190, 198). Concur—Kupferman, J. P., Silverman, Capozzoli and Yesawich, JJ.; Nunez, J., dissents in the following memorandum: I would reverse and remand for a hearing on the question of whether a valid agreement was entered into by the parties. Arbitration should be stayed pending such determination. Concededly there are differences in the telex offers and acceptances. Signing of a formal contract, requested by Toufic and promised by Joseph, was frustrated when the contract, claimed to have been sent by registered air mail, failed to reach Toufic. In the face of the differences in the telex communications, we should first ascertain whether there was an initial agreement to adopt by reference the "NAEGA" contract containing the arbitration clause. It seems to me that whether there is a valid agreement depends upon whether the differences between the telexes amount to "material alterations" as set forth in section 2-207 (subd [2], par [b]) of the Uniform Commercial Code. Unless an agreement for the sale of grain is reached, the agreement to arbitrate is not created. CPLR 7503 (subd [a]) provides that "[w]here there is no substantial question whether a *valid agreement* was made or complied with * * * the court shall direct the parties to arbitrate." (Emphasis added.) The Court of Appeals, in *Matter of Weinrott (Carp)* (32 NY2d 190, 198), interpreted "valid agreement" as a valid agreement to arbitrate. The court continued by stating that an arbitration provision of a contract is separable from the substantive portions of the contract and, as such, would survive a finding that the substantive provisions were induced by fraud. Nowhere does the court in *Weinrott* overturn the longstanding requirement that a contract must exist in order to support a finding that the parties agreed to arbitrate. (See *Matter of Luggage Workers Union [Major Moulders]*, 11 AD2d 668, where this court held a preliminary agreement to execute an industry-wide contract which contained an arbitration clause is not an agreement to arbitrate; *Matter of Helen Whiting, Inc. [Trojan Textile Corp.]*, 307 NY 360, which required an initial finding that the parties entered into a binding contract before reaching the issue of whether they agreed to arbitrate; 8 Weinstein-Korn-Miller, NY Civ Prac, par 7501.21.) It cannot be assumed that the parties intended to create the arbitration clause independent of the entire contract. Such independent existence would be meaningless. The agreement to arbitrate is not a separate contract; it must exist, if at all, within the framework of an entire agreement. This is not the same situation as found in *Weinrott,* where a complete contract existed and the issue was the proper forum in which to raise defenses to it. In the case at bar, the issue is whether a contract to arbitrate exists and the determination of that issue is reserved for the courts *(Matter of Helen Whiting, Inc. [Trojan Textile Corp.], supra; Matter of Nationwide Gen. Ins. Co. [Investors Ins. Co. of Amer.],* 37 NY2d 91, 95; CPLR 7503, subd [a].)