In the Matter of FERRARA S. p. A., Petitioner, for a judgment staying the arbitration commenced by UNITED GRAIN GROWERS, LTD., Respondent.

In the Matter of FRATELLI MORETTI CEREALI, S. p. A., Petitioner, for a judgment staying the arbitration commenced by UNITED GRAIN GROWERS, LTD., Respondent.

Nos. 77 Civ. 3549 (MEF) and 77 Civ. 3550 (MEF).

United States District Court,
S. D. New York.

Dec. 2, 1977.

779

Hamburger, Weinschenk, Molnar & Busch, New York City, for petitioners; Benjamin Busch, New York City, of counsel.

Hill, Rivkins, Carey, Loesberg & O'Brien, New York City, for respondent United Grain Growers, Ltd.; Robert J. Ryniker, New York City, of counsel.

## OPINION

FRANKEL, District Judge.

There are before the court competing applications to stay or to compel arbitration of disputes arising from two contracts for the sale of wheat by United Grain Growers, Ltd. ("UGG"), a Canadian corporation, to Fratelli Moretti Cereali, S. p. A. ("Moretti"), and Ferrara S. p. A. ("Ferrara"), both of Italy. Arbitration will be ordered.

### I.

The agreements between the parties provided for the sale of 20,000 tons of Canadian wheat to each buyer, f. o. b. St. Lawrence Port, with payment against presentation of documents in New York. Each was memorialized on a standard form North American Export Grain Association No. 2 ("NAEGA 2") contract, which consists of a single page with printing on both sides.[1] On the front of this document, beneath the

space for entry of the buyer's name, it is recited that the sale is made "ON THE CONDITIONS AND RULES INCORPORATED HEREIN." At the bottom of the same page, just below the signature lines, appears the legend: "(SEE CONDITIONS AND RULES ON OTHER SIDE)." The reverse side contains eleven printed clauses under the boldface caption, "CONDITIONS AND RULES," including the following:

"3. ARBITRATION. Buyer and seller agree that any controversy or claim arising out of, in connection with or relating to this contract, or the interpretation, performance or breach thereof, shall be settled by arbitration in the City of New York before the American Arbitration Association or its successors, pursuant to the Grain Arbitration Rules of the American Arbitration Association, as the same may be in effect at the time of such arbitration proceeding, which rules are hereby deemed incorporated herein and made a part hereof, and under the laws of the State of New York. The arbitration award shall be final and binding on both parties and judgment upon such arbitration award may be entered in the Supreme Court of the State of New York or any other Court having Jurisdiction thereof. Buyer and seller hereby recognize and expressly consent to the jurisdiction over each of them of the American Arbitration Association or its successors, and of all the Courts in the State of New York. Buyer and seller agree that this contract shall be deemed to have been made in New York State and be deemed to be performed there, any reference herein or elsewhere to the contrary notwithstanding."

It is not disputed that both buyers failed to perform their obligations under the contracts. UGG served separate demands for arbitration, and proceedings commenced before the American Arbitration Association with respect to the UGG-Ferrara controversy. On June 24, 1977, Moretti filed a peti-

---

1. In each case a slip of paper "attaching to and forming part of" the contract was attached to the NAEGA form. These slips set forth certain delivery and payment terms not relevant to the instant actions.

tion to stay arbitration in the Supreme Court of the State of New York. Ferrara commenced a similar proceeding in state court on July 12, and obtained a temporary stay *ex parte*. UGG removed both cases here on July 22, 1977, and has cross-petitioned for orders compelling arbitration.

## II.

Moretti and Ferrara resist arbitration primarily on the theory that they did not enter into enforceable agreements to arbitrate. It appears that the contracts were negotiated for the buyers by Italian grain brokers. The buyers claim that there was no discussion of, or express assent to, arbitration during the negotiations, and that the arbitration clause in NAEGA 2 was not mentioned. Relying primarily on New York and federal law, they contend that the quoted language on the face of NAEGA 2 referring to the provisions on the reverse side is insufficient to bind them to the arbitration term. Messrs. Remo Moretti, Director of Moretti, and Riccardo Ferrara, Counsellor of the Administrative Council of Ferrara, have averred in virtually identical affidavits that they neither knew nor had

reason to know of the arbitration clauses; each states he is familiar with Italian law, under which arbitration agreements are allegedly unenforceable unless they appear above the signatures of both parties, and each claims he therefore saw no reason to examine the reverse side of NAEGA 2, which is unsigned. As will appear, the court may assume *arguendo*, with whatever strain, that these identical accounts are true. Alternatively, the buyers contend that the contracts are governed by Italian law, and that the arbitration clauses are invalid pursuant to the rule mentioned above.

■ Since this court's jurisdiction over these actions is conferred by Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208, as added P.L. 91–368, 84 Stat. 692 (1970), it would seem that the enforceability of the arbitration clause at issue must be determined in accordance with federal law, i. e., generally accepted principles of contract law, see *Fisser v. International Bank*, 282 F.2d 231 (2d Cir. 1960); *Avila Group, Inc. v. Norma J. of California*, 426 F.Supp. 537 (S.D.N.Y.1977); *Starkman v. Seroussi*, 377 F.Supp. 518 (S.D.N.Y.1974).[2]

**2.** Chapter 2 of the Arbitration Act implements the United States' accession to the 1958 United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards, [1970] 3 U.S.T. 2517, T.I.A.S. No. 6997. As each arbitration agreement at issue here "falls under the Convention" within the meaning of 9 U.S.C. § 202, the court has jurisdiction over these actions under § 205 of the Act, and may direct that arbitration be held in accordance with the agreements under § 206.

It is well settled that in actions arising under Chapter 1 of the Act, questions concerning the enforceability of arbitration agreements are governed by federal law, *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402 (2d Cir. 1959), cert. dismissed, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960);. *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208 (2d Cir. 1973); *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209 (2d Cir.), cert. denied, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972), even where the parties have by agreement specified the law governing the interpretation of the contract, *Collins Radio Co. v. Ex-Cell-O Corp.*, 467 F.2d 995 (8th Cir. 1972); *Necchi Sewing Machine Sales Corp. v. Carl*, 260

F.Supp. 665 (S.D.N.Y.1966), and the place of and/or tribunal for arbitration, see *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); *Prima Paint, supra; Sam Reisfeld & Son Import Co. v. S. A. Eteco*, 530 F.2d 679 (5th Cir. 1976). The buyers have suggested no reason why a different rule should apply in proceedings brought under Chapter 2. See 9 U.S.C. § 208. The strong federal policy embodied in the Act favoring enforcement of agreements to arbitrate commercial disputes is particularly compelling in controversies involving international commercial transactions. *Scherk v. Alberto-Culver Co., supra*; *Hanes Corp. v. Millard*, 174 U.S. App.D.C. 253, 531 F.2d 585 (1976); *Fotochrome, Inc. v. Copal Co., Ltd.*, 517 F.2d 512 (2d Cir. 1975).

Under Article II of the Convention, courts of the Contracting States are bound to give effect to an "agreement in writing * * * to submit to arbitration" at the request of one of the parties unless the agreement is "null and void, inoperative, or incapable of being performed." Unlike Article V, which governs the recognition and enforcement of arbitral *awards*, Article II does not indicate which law is to govern enforceability of an arbitral *agreement*, but it appears that drafters intended to impose on the

In the instant cases, however, it is unnecessary to decide precisely which body of law governs the enforceability of arbitration agreements in actions in federal courts falling under the United Nations Convention implemented in Chapter 2, see n. 2, *supra*. Whether the applicable law is the federal law developed under Chapter 1 of the Arbitration Act; a uniform body of international law embodied in the Convention, see *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520–21 n. 15, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974); or—by virtue of the parties' contractual choice of law provision and their designation of New York as the place for arbitration, see *Matter of I. S. Joseph Co. (Toufic Aris & Fils)*, 54 A.D.2d 665, 388 N.Y.S.2d 1 (1st Dep't. 1976); *In re Electronic & Missile Facilities, Inc.*, 38 Misc.2d 423, 236 N.Y.S.2d 594 (Sup.Ct.1962); Restatement (Second) of Conflicts of Laws § 218 (1971)—the law of New York State, the result is the same, and the alleged rule of Italian law on which the buyers rely does not apply. The purported Italian law rule appears to be a special requirement governing agreements to arbitrate, but inapplicable to other contractual terms and conditions. Federal courts have consistently refused to apply such rules in cases arising under Chapter 1 of the Arbitration Act. *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir. 1977); *Medical Development Corp. v. Industrial Molding Corp.*, 479 F.2d 345 (10th Cir. 1973); *Avila Group v. Norma J. of California, supra*. Similarly, the Supreme Court has noted that "the delegates to the Convention voiced frequent concern that courts of signatory countries in which an agreement to arbitrate is sought to be enforced should not be permitted to decline enforcement of such agreements on the basis of parochial views of

their desirability or in a manner that would diminish the mutually binding nature of the agreements." *Scherk v. Alberto-Culver Co., supra*, 417 U.S. at 520–521 n. 15, 94 S.Ct. at 2458. This concern would seem to be equally compelling whether the "parochial view" is that of the forum or of another state with an alleged interest in the controversy.

■■■ The buyers do not deny that NAEGA 2 contracts embodying the essential terms of the actual agreements between the parties were duly executed by authorized agents of the respective companies. Since there is no allegation of fraud or duress in the signing or inducement of the contracts, and the cases do not involve parties of substantially unequal bargaining power or sophistication, the buyers' contentions are insufficient to bring them within any exception to the general rule that a person of ordinary understanding and competence is bound by the provisions of a contract he signs whether or not he has read them. *N & D Fashions, Inc. v. DHJ Industries, Inc.*, 548 F.2d 722 (8th Cir. 1977); *Southeastern Enameling Corp. v. General Bronze Corp.*, 434 F.2d 330 (5th Cir. 1970); *Avila Group, Inc. v. Norma J. of California, supra*, 426 F.Supp. at 540, and authorities cited therein; *Matter of Level Export Corp. (Wolz, Aiken & Co.)*, 305 N.Y. 82, 111 N.E.2d 218 (1953). In these circumstances, the question of a "subjective" agreement to arbitrate is irrelevant. *Avila Group, Inc. v. Norma J. of California, supra; Bigge Crane & Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240 (E.D.N.Y.1973). There is no doubt that the quoted legends on the face of NAEGA 2 are sufficient to give notice to a reasonably prudent person of the arbitration provision

ratifying states a "broad undertaking" to give effect to such an agreement unless it "*offends the law or public policy of the forum.*" Haight, Convention on the Recognition and Enforcement of Foreign Arbitral Awards: Summary Analysis of Record of United Nations Conference, May/June 1958, at 28 (1958), quoted in *Scherk v. Alberto-Culver Co., supra*, 417 U.S. at 530–531 n. 10, 94 S.Ct. 2449 (Douglas, J., dissenting) (emphasis by Justice Douglas). See also *Antco Shipping Co., Ltd. v. Sidermar S. p.*

*A.*, 417 F.Supp. 207 (S.D.N.Y.1976). This result is consistent in these cases with the view that enforceability of an agreement to arbitrate relates to the law of remedies and is therefore governed by the law of the forum. *Matter of Gantt (Hurtado & Cia)*, 297 N.Y. 433, 79 N.E.2d 815, cert. denied, 335 U.S. 843, 69 S.Ct. 65, 93 L.Ed. 394 (1948); see Restatement (Second) of Conflicts of Laws § 218, Reporter's Note (1971).

and other things appearing on the back. *Medical Development Corp. v. Industrial Molding Corp.*, 479 F.2d 345 (10th Cir. 1973); *Avila Group, Inc. v. Norma J. of California, supra*; cf. *Midland Tar Distillers, Inc. v. M/T Lotos*, 362 F.Supp. 1311 (S.D.N.Y.1973); *Matter of Goodman & Theise, Inc. (Zala)*, 133 Misc. 473, 233 N.Y.S. 46, aff'd 224 App.Div. 838, 231 N.Y.S. 760 (1st Dep't. 1928). The buyers are therefore bound by these arbitration clauses, and there is no issue of fact requiring a trial. *Joseph Muller Corp. Zurich v. Commonwealth Petrochemicals, Inc.*, 334 F.Supp. 1013 (S.D.N.Y.1971); cf. *Interocean Shipping Co. v. National Shipping & Trading Corp.*, 462 F.2d 673 (2d Cir. 1972).

In light of this finding, it is unnecessary to rule on the buyers' claim that the grain sale contracts themselves are unenforceable because they allegedly fail to comply with certain Italian Foreign Currency Control Regulations. Given the parties' agreements that the contracts should be deemed to have been made in New York State, and that controversies arising out of the contracts "or the interpretation, performance or breach thereof" should be settled under the laws of that State, the contention seems dubious on the merits. But it is in any event a matter to be decided by the arbitrators. Cf. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Island Territory of Curacao v. Solitron Devices, Inc.*, 489 F.2d 1313 (2d Cir. 1973), cert. denied, 416 U.S. 986, 94 S.Ct. 2389, 40 L.Ed.2d 763 (1974); *Matter of Weinrott (Carp)*, 32 N.Y.2d 190, 344 N.Y.S.2d 848, 298 N.E.2d 42 (1973).

### III.

■ In the *Ferrara* case, the buyer additionally asserts that the proceedings currently pending before the American Arbitration Association are invalid because the demand for arbitration was improperly served. The UGG-Ferrara contract gives the buyer's address as "Lercara-Palmero, Italy," but UGG, by registered mail, served both its notice of default and its demand for arbitration, dated December 10, 1976, and February 2, 1977, respectively, upon Dr. Giovanni Ferrara, Palermitana Dimacinaczione, S. p. A., at an address in Palermo, Sicily. UGG alleges that it had communicated with the buyer at that address on prior occasions, and in any event it is clear that Ferrara received timely notice of the contents of both documents. On December 13, 1976, it replied to the notice of default by a telex in which it admitted nonperformance of the contract and asserted impossibility of performance due to a "force majeure," i. e., new foreign exchange regulations prompting Italian banks to deny the credit necessary to import the goods. On March 9, 1977, Ferrara responded by registered mail to a letter from the American Arbitration Association dated February 24, and transmitted to Lercara-Palermo, Italy, acknowledging the Association's receipt of UGG's demand for arbitration. Ferrara claims, however, that UGG's transmittal of its demand to an address different from that given in the contract did not constitute service upon a "party" within the meaning of N.Y. CPLR § 7503(c) (McKinney's Supp. 1976–77), and that the arbitration proceedings are therefore "jurisdictionally" defective.

The assertion is without merit. The shortest answer is that the parties agreed to submit to arbitration "pursuant to the Grain Arbitration Rules of the American Arbitration Association," under which the relevant notice appears to be the notice of hearing mailed by the Association and not the demand served by the claimant. As noted above, that notice was sent to the contract address, and Ferrara does not deny timely receipt. Furthermore, if the requirements of CPLR § 7503(c) are relevant, the cases cited by Ferrara fail to establish that they have not been satisfied. The closest case, *Empire Mutual Insurance Co. v. Levy*, 35 A.D.2d 916, 316 N.Y.S.2d 24 (1st Dep't. 1970), stands for the proposition that service of a demand on a remote office of a company known to be ignorant of the transactions at issue, and made for the purpose of hindering or preventing application for a judicial stay of arbitration within the time

limitations set forth in CPLR § 7503(c), is not service designed to give actual notice and therefore is not grounds for default. The question in this case is whether respondent gave appropriate notice of the commencement of proceedings before the American Arbitration Association, and Ferrara has not shown that a New York court would find the service effected here inadequate for these purposes. Since both parties consented to the jurisdiction of the Association and the courts of New York, and there is no question that Ferrara received timely actual notice of the May 27, 1977, hearing before the Association, which it chose to ignore, the requirements of due process have been satisfied. See *Lawn v. Franklin*, 328 F.Supp. 791 (S.D.N.Y.1971).

For the reasons stated, the petitions to stay arbitration are denied, and the cross-petitions to compel arbitration are granted.

So ordered.