**RHONE MEDITERRANEE COMPAGNIA FRANCESE DI ASSICURAZIONI E RIASSICURAZIONI, Plaintiff,**

v.

**Achille LAURO, et al., Defendants.**

**Civ. No. 81–116.**

District Court, Virgin Islands,
D. St. Thomas and St. John.

Oct. 4, 1982.

John Short, Dudley, Dudley & Topper, Charlotte Amalie, St. Thomas, V.I., for plaintiff.

Thomas D. Ireland, Charlotte Amalie, St. Thomas, V.I., for defendants.

## MEMORANDUM AND ORDER

CHRISTIAN, Chief Judge.

Before the Court is the motion of the defendants to dismiss the amended complaint and for an order directing the plaintiff to arbitrate the instant controversy in Napoli, Italy. The motion will be granted in part and denied in part.

### I. *Facts*

The relevant facts of this cause are as follows. On March 30, 1979, the vessel "Angelina Lauro" caught fire and burned while tied up at the dock of the West Indian Co., Ltd. in Charlotte Amalie, St. Thomas, U.S. Virgin Islands. The fire resulted in a total loss of the vessel. The "Angelina Lauro" was allegedly owned by an Italian citizen, defendant Achille Lauro, who is doing business under the name of Achille Lauro-Armatore, a/k/a Flotta Lauro, a/k/a Lauro Lines (hereinafter "Achille Lauro"), and by defendant X Company, an unknown corporation, partnership, joint venture, trust and/or other business entity which may have owned all or part of the vessel. All business addresses of defendant Achille Lauro are in Italy.

On the date of the fire, the ship was under time-charter to Costa Armatori S.P.A. (hereinafter "Costa") an Italian corporation, whose principal place of business is in Genoa, Italy. Costa lost property and fuel in the fire which was worth at least 910 million liras (over $1 million). Costa was reimbursed for its losses by its insurer, plaintiff Rhone Mediterranee Compagnia Francese di Assicurazioni e Riassicurazioni (hereinafter "Rhone"), an Italian insurance company.

Rhone filed this law suit, as subrogee of Costa, to recover the payments it made to its insured. Rhone alleges that the fire was caused by the unseaworthy condition of the vessel "Angelino Lauro," and/or by the negligence of the employees and/or agents of defendant Achille Lauro and X Company, and/or by the negligence of defendant Antonio Scotto di Carlo, an Italian citizen, who was the master and/or captain of the "Angelino Lauro" on March 30, 1979, and who was the agent of Achille Lauro and/or X Company. Plaintiff also contends that defendants breached the time-charter agreement with Costa.

Defendants Achille Lauro and Antonio Scotto di Carlo have filed a motion to dismiss the amended complaint because they contend that the plaintiff is required to arbitrate this dispute in Napoli, Italy. They note that plaintiff's claim is derived from the rights of its insured, Costa, and that Costa agreed to arbitrate all disputes arising out of the charter of the "Angelino Lauro," pursuant to a time charter agreement, dated January 22, 1977, that it entered into with Achille Lauro-Armatore. The relevant portions of the agreement are as follows:

"23. *Arbitration*

Any dispute arising under the charter to be referred to arbitration in London (or such other place as may be agreed according to box 24) one Arbitrator to be nomi-

nated by the Owners and the other by the Charterers, and in case the Arbitrators shall not agree then to the decision of an Umpire to be appointed by them, the award of the Arbitrators or the Umpire to be final and binding upon both parties."

"*Box 24*

Place of arbitration (only to be filled in if place other than London agreed) (Cl.23)

NAPOLI"

The plaintiff does not contest the fact that Costa entered into an agreement with the foregoing clause, or that the plaintiff is bound to arbitrate the action if Costa would have been so bound. Plaintiff has opposed defendant's motion on the grounds that the agreement to arbitrate is null and void under Italian law and therefore need not be complied with. Plaintiff further argues that even if it is compelled to arbitrate, this action should not be dismissed, but merely stayed during the pendency of the arbitration. Finally, plaintiff notes that even if it is required to arbitrate its claim against Achille Lauro, its claim against defendant Antonio Scotto di Carlo should be allowed to proceed to trial because Mr. di Carlo was not a party to the time-charter agreement. Further, plaintiff argues that this Court is not required to dismiss its claim against Mr. di Carlo under the doctrine of *forum non conveniens.* We will treat each of the foregoing points in turn.

## II. *Federal Law Determines the Enforceability of the Arbitration Provision*

The arbitration provision at issue is contained in a maritime contract between two foreign citizens (from Italy), and therefore the mandates of the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (hereinafter "Convention") must be followed by this Court.[1] Article II of the convention which contains the provisions relevant to this dispute, states the following:

"1. Each Contracting State shall recognize an agreement the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.

2. The term "agreement in writing" shall include an arbitral clause in a contract or an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams.

3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed."

1. Chapter 2 of the Federal Arbitration Act, 9 U.S.C. §§ 201–208, implements the United States accession to the Convention, 3 U.S.T. 2517, T.I.A.S. No. 6997 (1970). 9 U.S.C. § 202 provides the following in pertinent part:

"An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless ..."

9 U.S.C. § 2 states:

"Validity, irrevocability, and enforcement of agreements to arbitrate

A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration of an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract."

It should also be noted that the Convention was ratified by Italy on January 31, 1969. *See* notes to 9 U.S.C.A. § 201, 1982 Pocket Part at 153–54, for a list of signatory nations to the convention.

# 484

In sum, the Convention states that this Court must refer Achille Lauro and Rhone (as subrogee of Costa) to arbitration, pursuant to the terms of the time-charter agreement, unless the agreement to arbitrate is "null and void, inoperative or incapable of being performed." However, the Convention does not specify which nations' law should be utilized when determining whether the agreement to arbitrate is valid. *See* discussion in Quigley, *Accession by the United States to the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards,* 70 Yale L.J. 1049, 1064 (1961); *Matter of Ferrara S.p.A.,* 441 F.Supp. 778, 780–81 at n. 2 (S.D. N.Y.1977).

Although the Convention is silent on this issue, the United States Court of Appeals for the Third Circuit has issued a pertinent ruling which we are bound to follow. In *Becker Autoradio v. Becker Autoradiowerk GmbH,* 585 F.2d 39 (3rd Cir.1978), the appellate court was asked to rule whether a West German corporation and a Pennsylvania corporation should be required to arbitrate their contract dispute. The arbitration clause at issue read as follows:

"The Arbitration Court domiciled in Karlsruhe [Federal Republic of Germany] shall have sole jurisdiction with regard to all disputes arising out of and about this agreement. The Arbitration Court shall determine its procedures according to the Rules of Procedure of the International Chamber of Commerce, Paris. The arbitral award shall have the effect, with respect to the parties, of a legally valid court judgment."

*Becker, supra,* at 42. In deciding the question before it, the Third Circuit stated, "There has been much discussion by the parties concerning the applicability of German law or Pennsylvania law in the resolution of this dispute. It may well be that the question of which law is to be applied will have to be answered in decid-

ing the merits of the underlying controversy. However, the case before us presents only the issue of the *arbitrability* of that controversy when a contract involves 'commerce,' as this one does, whether as 'suit proceeding is referable to arbitration ... under an agreement [to arbitrate]' *pursuant to ... or to the Convention on Recognition and Enforcement of Foreign Arbitral Awards ... is clearly a matter of federal substantive law.* Thus, the question of whether, in contracts involving commerce, there is an agreement to arbitrate an issue or dispute upon which suit has been brought is governed by federal law. Concomitantly, questions of interpretation and construction of such arbitration agreements are similarly to be determined by reference to federal law.... [numerous citations omitted] As the court in *Coenen v. R.W. Pressprich & Co.,* 453 F.2d 1209, 1211 (2nd Cir.1972), stated, '[o]nce a dispute is covered by the [federal Arbitration] Act, *federal law applies to all questions of [the arbitration agreement's interpretation, construction validity, revocability, and enforceability.'* "

*Becker, supra* at 43 (emphasis added). Thus, the Third Circuit's position is that normal conflicts of law rules should not be used to determine which law should govern the validity of an arbitration clause, when the parties are subject to the dictates of the Convention. Neither the law of a foreign country, or the law of a particular state (or territory) can ever be chosen—only federal law is controlling.

This approach was explained further in *Matter of Ferrara, supra.* First, the district court noted that "[s]ince this court's jurisdiction over these actions is conferred by Chapter 2 of the Federal Arbitration Act [2] ... it would seem that the enforceability of the arbitration clause at issue must be determined in accordance with federal

**2.** See 9 U.S.C. § 203 which states:
"An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (in-

cluding the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy."

law, i.e., generally accepted principles of contract law," at 780. It then explained that this rule appears to be in accord with the scheme set up by the Convention. "Article II [of the Convention] does not indicate which law is to govern enforceability of an arbitral *agreement,* but it appears that [the] drafters intended to impose on the ratifying states a 'broad undertaking' to give effect to such an agreement unless it *'offends the law or public policy of the forum' "* at 780–81 n. 2 (*quoting* Haight, Convention of the Recognition and Enforcement of Foreign Arbitral Awards: Summary Analysis of Record of United Nations Conference, May/June 1958, at 28 (1958)). Finally, the court stated that applying federal law "is consistent ... with the view that enforceability of an agreement to arbitrate relates to the law of remedies and is therefore governed by the law of the forum," at 781 n. 2.

Under federal law, the arbitration clause at issue is clearly enforceable, as there is "a strong policy in the federal courts favoring arbitration, especially in the context of international agreements.... Moreover, any 'doubts as to whether an arbitration clause may be interpreted to cover the asserted dispute should be resolved in favor of arbitration...' " *Becker, supra,* at 44. No defects in the arbitration agreement have been alleged under the principles of federal contract law.

However, plaintiff has strenuously argued that in this case an exception should be made to the rule requiring the application of federal law because it contends, under Italian law any award that might be made by the arbitrators would be unenforceable in the courts of Italy, where the defendants reside and do business. Plaintiff states that this Court should not order a "useless act" i.e. an arbitration which would not be recognized in Italy, but rather should modify the usual choice-of-law principles. We disagree.

Firstly, if there were no law on this issue in our circuit, we might have adopted plaintiff's view that Italian law should govern. However, there is no void in the law. In *Becker, supra,* the Third Circuit directed the lower courts to apply federal law. The language in *Becker* is clear and unambiguous—it leaves no room for the carving out of exceptions.

Secondly, we find that the result in this case is not contrary to the intent of the drafters of the Convention. It appears that the delegates chose not to limit the mandate to arbitrate to those cases in which it was certain that an arbitral award would subsequently be enforced by the courts. "[A]rticle [II(3)] does not explicitly relate arbitral agreements which will be the basis for a stay order to arbitral awards capable of enforcement under the Convention." Quigley, *supra,* at 1064. At the Convention, the German delegate observed this omission and proposed that the article be amended so that arbitral agreements were related to arbitral awards that were enforceable. "When the German proposal was put to a vote, it failed to obtain a two-thirds majority (13 to 9) and the Article was thus adopted without any words linking agreements to the awards enforceable under the Convention. Nor was this omission corrected in the Report of the Drafting Committee ... " *Scherk v. Alberto-Culver Co.* 417 U.S. 506, 530–31 n. 10, 94 S.Ct. 2449, 2462–2463 n. 10, 41 L.Ed.2d 270 (*quoting* Haight, *supra,* at 28). In sum, the Convention's mandate to refer parties to arbitration is not necessarily negated because an arbitral award would be unenforceable under a foreign forum's law.[3]

Finally, even if an arbitral award would not be recognized in court, we conclude that referring the parties to arbitration would not necessarily be "useless". If all parties

---

**3.** We must note that the above statement is not a ruling that an arbitral award would in fact be unenforceable under Italian law in the circumstances of this case. All parties have submitted extensive briefs on that issue, but we will not rule, as the question is not material at this juncture of the litigation. If a party subsequently seeks to obtain recognition and enforcement of an arbitral award, the issue will then be ripe for decision. *See* Article IV(1)(a) of the Convention.

are satisfied with the arbitrators' decision, and voluntarily abide by its terms, there will be no need for further litigation or enforcement of an arbitral award. Arbitration will afford the parties a final opportunity to amicably settle their differences.

### III. Stay Should be Granted Pending Arbitration

■ Although we agree with the defendants that we should refer Rhone and Achille Lauro to arbitration in Napoli, Italy, we do not believe that it would be proper to dismiss this lawsuit. Rather, we will stay this action pending arbitration.

Defendants have cited *McCreary Tire & Rubber Co. v. Ceat S.p.A.,* 501 F.2d 1032 (3rd Cir.1974), as precedent for the proposition that we should dismiss this action. In *McCreary,* at 1038, the Court of Appeals for the Third Circuit said,

> "Unlike § 3 of the federal Act, article II(3) of the Convention provides that the court of a contracting state shall 'refer the parties to arbitration' rather than 'stay the trial of the action.' The Convention forbids the courts of a contracting state from entertaining a suit which violates an agreement to arbitrate. Thus the contention that arbitration is merely another method of trial, to which state provisional remedies should equally apply, is unavailable."

The appellate court concluded that because a pre-trial foreign attachment violated the terms of the pertinent arbitration agreement, the lower court would be required to discharge the foreign attachment. The Third Circuit also ordered the district court to refer the parties to arbitration. It did not order the district court to dismiss the action.

Defendants argue that *McCreary* holds that if a controversy must be referred to arbitration under the Convention, then a court is divested of its subject matter jurisdiction over the action. We disagree. Our interpretation of *McCreary* is that if a controversy must be referred to arbitration under the Convention no other judicial action should be taken in the interim. Arbi-

tration does not merely stay the trial, it stays all proceedings—e.g. pre-trial conferences, discovery, etc. Further, any pre-trial judicial action that was taken prior to arbitration, which is in conflict with the terms of the arbitration, must be rescinded. *McCreary* does not state, however, that a controversy referred to arbitration must be removed from a court's docket. A Third Circuit case which was decided after *McCreary* supports our conclusion. In *Becker, supra,* at 47, the Third Circuit held that arbitration was mandated by the Convention and then went on to say that "the case will be remanded with the direction that the district court *stay* the proceedings before it pending arbitration." (emphasis added).

### IV. Plaintiff's Action against Defendant Antonio Scotto di Carlo will also be Stayed

■ Although defendant Antonio Scotto di Carlo was not a party to the arbitration agreement at issue, we will stay the action as to the claims pending against di Carlo also. The "power to stay proceedings is incidental to the power inherent in every court to control the disposition of the cases on its docket." *Lawson Fabrics, Inc. v. Akzona, Inc.* 355 F.Supp. 1146, 1151 (S.D.N.Y.1973). The plaintiff's claim against di Carlo is based on the same operative facts, and is inherently inseparable, from its claim against Achille Lauro. If the fire at issue was caused in whole, or in part, because di Carlo improperly performed his tasks as master and/or captain of the vessel, Achille Lauro and di Carlo may both be liable to the plaintiff, as di Carlo was allegedly acting as Achille Lauro's agent. In this type of situation, courts have chosen to stay all proceedings, because if one party "was forced to try the case, the arbitration proceedings would be rendered meaningless and the federal policy in favor of arbitration effectively thwarted." *Sam Reisfeld & Son Import Co. v. S.A. Eteco,* 530 F.2d 679, 681, (5th Cir.1976).

As we are staying the claims against di Carlo, we will not reach the question of

whether this is a convenient forum for the litigation. That issue will need to be decided only if the plaintiff chooses to continue litigation in this Court after the arbitration proceedings in Napoli, Italy have terminated.

### ORDER

The premises considered and the Court being fully advised,

IT IS ORDERED the motion of the defendants to dismiss this action be, and the same is hereby, DENIED;

IT IS FURTHER ORDERED that Rhone Mediterranee Compagnia Francese di Assicurazioni E. Riassicurazioni and Achille Lauro submit the instant dispute to arbitration in Napoli, Italy pursuant to the terms of the arbitration agreement;

IT IS FURTHER ORDERED that all proceedings in the instant action be, and they are hereby, STAYED PENDING ARBITRATION.