HARVEY and Others *v.* BALL and Others.

DESCENT.—*Personal Status.*—When a canon of descent makes the right of inheritance to depend on personal *status*, such *status* must be ascertained from the *lex domicilii;* but if a statute of descent directs the inheritance of land without regard to personal *status*, then the law of another state as to such *status* can have no influence in determining upon whom the descent is cast.

SAME.—*Statute Construed.*—Section 123 of chapter 28, Revised Statues 1843, which provided, that "if any man shall marry a woman who has, previous to the marriage, borne an illegitimate child, and after marriage shall acknowledge such child as his own, such child shall be deemed legitimate to all intents and purposes," did not merely or primarily declare the personal *status* of such child, but bestowed upon it the capacities of an heir; and as a provision governing the descent of lands in this State, it operated without regard to domicil.

APPEAL from the Tippecanoe Civil Circuit Court.

FRAZER, C. J.—Horatio N. Harvey, a citizen of this State, died intestate in 1850, without issue, and seized in fee of certain lands in Tippecanoe county. The appellants are heirs at law of Horatio, one of them being his legitimate brother, and the others the children of a legitimate sister. Before the marriage of his parents his mother gave birth, in Pennsylvania, to a bastard child, named Powell Harvey, who has always resided in that State. Upon her marriage, the husband took the child into his family and acknowledged him as his own. The parents always, until their death, in 1830, resided in Pennsylvania. The question in the record before us is, whether Powell, the bastard brother of the intestate, is entitled to share in the inheritance.

It may be stated, as a proposition which admits of no dispute, that it is within the legitimate scope and power of the legislature to prescribe canons of inheritance which shall absolutely determine the course of descent of all lands within this State. There is no limit upon the authority of the legislature in this matter which can in any way affect the question before us. It might, surely, be enacted that children of the same parents, whether born in lawful wedlock or not, should inherit alike the lands of each other, and that their personal *status*, however fixed by the law of their domicil, should not affect their rights as heirs. In short, the *lex rei sitæ* must govern exclusively the descent of real estate. It impresses itself upon the soil, so to speak, and gives the land all its inheritable qualities and characteristics.

Another proposition deemed equally beyond dispute is,

that personal *status* can be determined only by the law of the domicil; and hence, whenever the canon of descent makes the right of inheritance to depend upon this *status*, the *lex domicilii*, and not the *lex rei sitæ*, must be appealed to, to ascertain it.

It must be assumed, in the absence of averment, that the common law prevails in Pennsylvania, and was the law of the domicil of Powell Harvey; and it would, therefore, follow that his personal *status* was that of illegitimacy. But the law of Pennsylvania cannot control the descent of real estate in Indiana. If by our laws personal *status* is a fact to be ascertained, in order to determine upon whom the descent is cast, we must consider what is the law of Pennsylvania, to enable us to determine the fact; but if, on the other hand, our statute of descents directs the inheritance without regard to personal *status*, then the law of that State can have no influence, and is not to be considered.

So far in the inquiry which the case calls for, there would seem to be little, if any, room for difference of opinion.

It remains, then, only to ascertain whether, under our rules of inheritance in force in 1850, the personal *status* of legitimacy was necessary to constitute capacity to take lands by descent. If it shall be ascertained that bastards, like this one, had this capacity just like *legitimate* children, then the appellants fail here; if not, they succeed, and the judgment must be reversed.

By the Revised Statutes of 1843, ch. 28, art. 5, sec. 108, it was enacted, that "the real estate of every person dying intestate shall descend in the manner, and subject to the rules and provisions of this article." Canons of descent then follow, by virtue of one of which (sec. 111, cl. 3) the appellants claim the estate as the brothers and sisters, and descendants of a deceased sister, of the intestate. By the rules of the common law, Powell, being the son of nobody, and without inheritable blood, would not have been deemed a brother, and could not take under this statute. But section 123 of the same article makes a new rule upon that

subject, to wit, that "if any man shall marry a woman who has, previous to the marriage, borne any illegitimate child, and after marriage shall acknowledge such child as his own, such child shall be deemed legitimate to all intents and purposes." This, it must be borne in mind, is one of the provisions of article 5, which section 108 declares shall control the descent of real estate. It is, therefore, as effective in declaring that an illegitimate child thus acknowledged by the father after his marriage shall have the inheritable capacity of a legitimate child, as if it had been enacted in terms that in the contingencies of this case brothers and sisters, whether legitimate or illegitimate, shall take the estate. The effect of it is, not merely or primarily to declare the personal *status* of the individual, but to bestow upon him the capacities of an heir. If it had no other effect than to fix the *status*, its operation would necessarily be confined to persons domiciled here, and of course it could not operate upon one in Pennsylvania. The infirmity of the able argument for the appellants consists in supposing such to be its only effect. But it stands in the statute as a provision governing the descent of lands, and by all fair construction must be so applied, unless the power of the legislature to make it thus applicable can be questioned. Its language is too broad to be limited to persons domiciled in this State, nor is there any strong reason for such a limitation which might warrant us in believing that the legislature intended less than the fair import of the words employed, and thus enable us by construction to effectuate such legislative intent.

Our attention has been called to the discussion of the general question in Story's Conflict of Laws (§ 93, *et seq.*) and the important English cases there cited. We have examined those cases with care, but it does not appear to us that they serve to illustrate the one in hand. It seems to us that our statute settles the question before us, and, if we have correctly apprehended its meaning, that there is no room for further controversy. The laws of descent of Eng-

land and of Scotland, where those cases arose, are not like ours, and consequently the questions there decided cannot be like that which is presented by this record. *Smith* v. *Kelly*, 23 Miss. 167, is also cited. We have not access to the Mississippi statute, but we conclude from the report of that case that it merely declared the *status* of such children. If so, the case cannot be applicable to the present question.

Affirmed, with costs.

Elliott, J., dissented.

Gregory, J., was absent, having been of counsel.

*S. A. Huff* and *B. W. Langdon*, for appellants.

*Z. Baird* and *J. A. Stein*, for appellees.

