Buckles v. Ellers.

---

No. 7541.

BUCKLES v. ELLERS.

ACTIONS.—*Statutory Remedies for Personal Injuries.*—*No Extra-Territorial Force.*—A statute, providing a right of action for a personal injury, has no extra-territorial force, and does not confer a right of action for an injury inflicted in another State.

SEDUCTION.—*Inter-State Laws.*—*Statute Construed.*—While section 24 of the code, 2 R. S. 1876, p. 43, confers upon any unmarried woman the right to prosecute an action for her own seduction, yet it has no extra-territorial force, and does not authorize such an action to be maintained. in this State for acts of seduction committed in another State, even. though acts of criminal intercourse continued in this State, as a consequence of the seduction which had taken place in another State.

SAME.—*Presumption.*—*Common Law.*—It will be presumed, nothing being shown to the contrary, that the common law, on the subject of prosecutions for seduction. is in force in an adjoining State.

SAME.—By the common law an unmarried woman acquired no right of. action for her seduction.

SAME.—*Comity Between States.*—It is only common-law rights, or such, rights as are recognized as existing by the general usage of civilized. nations, which comity enforces in a foreign forum.

From the Montgomery Circuit Court.

*J. L. Ray, W. P. Britton* and *M. W. Bruner*, for appel-- lant.

*E. C. Snyder*, for appellee.

NIBLACK, C. J.—The complaint in this case was by Mary Ellers, an unmarried woman, against Wiley Buckles, for seduction.

A jury returned a verdict for the plaintiff, assessing her damages at one thousand dollars, and, after denying a motion for a new trial, the court rendered judgment in her favor upon the verdict.

The only question made here by the appellant is upon the alleged insufficiency of the evidence to sustain the verdict.

The appellee was the principal and only important witness in her own behalf. She stated that at the time of the trial she lived in Hamilton county, in this State ; that she went to Champaign, Illinois, to live, in June, 1875, where, as a means of living, she became engaged in sewing and dress-making ; that she became acquainted with the appellant at that place in September, 1876, when she was under twenty years of age ; that she first casually met him upon the street, where

he was introduced to her by a mutual acquaintance; that after this meeting he called to see her at her boarding house quite frequently, sometimes taking her out riding, and sometimes to places of amusement. She then proceeded: "After he had been calling on me for a few weeks, we became engaged to be married. We then had sexual intercourse frequently. About every time he came to see me, we had sexual intercourse. It was on account of my love for him, thinking he would marry me, that I submitted to his embraces. He continued to call on me, and have sexual intercourse with me, at Champaign, Illinois, from the fall of 1876, to September, 1877, when I went, on the I., B. & W. R. R., with him to the city of Indianapolis, Indiana. He was on his way to the races at Louisville, Kentucky, and I was going to my father's, near Noblesville, Indiana. We stopped all night at the Sherman House, at Indianapolis, as husband and wife, and occupied the same room and bed, and had sexual intercourse there. He registered as 'W. Busy and Lady.' The reason why I had intercourse with him there, at that time, was because I loved him better than any other man, and had confidence in him. I thought he would marry me, and that we would go to Kansas in the spring. The next day he went on to Louisville and I went home. He paid all my expenses, hotel bill and railroad fare, and gave me money to go home on to my father's."

She further stated that the next time she met the appellant was in October, 1877, at the city of Crawfordsville, where they stopped at a hotel, as husband and wife, and again had sexual intercourse, she coming to that city at his request; that the next and last time they met was at Covington, in this State, in the latter part of January, 1878, where they spent two or three days together, occupying the same bed, and again having sexual intercourse, from which she became pregnant, and from which a miscarriage resulted.

On cross-examination, the appellee admitted that at the

time she first met the appellant, and made his acquaintance, she was the mother of an illegitimate child, some three or four years old, and went by the assumed name of "May Anderson," claiming to be a married woman, living separate from her husband; also, that during the time she sustained intimate relations with the appellant, he gave her small sums of money from time to time, and that, resulting from such relations, she had also had a miscarriage in the spring of 1877.

The question for our decision is, did the evidence, set out as above, which embraces all that was most favorable to the appellee, make out, or fairly tend to make out, against the appellant, an actionable charge of seduction, under the laws of this State?

The first objection urged against the sufficiency of the evidence is, that it was shown affirmatively, that the supposed injury complained of was committed in the State of Illinois, and that hence no right of action accrued to the appellee for such supposed injury under any statute of this State.

Upon the point presented by this objection, there seems to be some confusion in, and apparent conflict between, the authorities bearing upon it, but we think this confusion and apparent conflict have resulted more from a failure, in very many cases, to observe the distinction which evidently exists, and ought to be well recognized, as regards their general transitory character, between common-law actions and actions purely statutory in their origin, than from any other cause.

In Story on the Conflict of Laws, p. 369, sec. 307 *d*, 13th edition, it is said: "In general where actions *ex delicto* are held transitory, and suits allowed to be maintained in a foreign forum the right of action and the nature and extent of damages must be estimated according to the law of the place where the wrong was committed." To this proposition some rather confusing and unsatisfactory exceptions are

noted by the learned author, but the exceptions do not over-throw the general rule as stated above by him.

Rorer on Inter-State Law, at pages 144 and 145, after re-viewing the authorities on the general subject, announces as a conclusion, that, in all *purely personal* actions of a transitory nature for *torts at common law*, a citizen of a State may sue a citizen of another State, in the courts of such other State, or of any State wherein he may reside, or may be found and served with process, without regard to the place or State in which the injury may have been perpetrated. But that where certain acts are made wrongs by statute, which were not such theretofore, or where remedies additional to those which existed at common law are provided by statute, advantage can be taken of these new and additional reme-dies only within the territory or locality in which the statute has force. These constitute new rights, so to speak, and depend for their enforcement always upon the statutes by which they are created. · And such statutes will be enforced only by the courts of the State wherein they are enacted.

Taking the conclusion thus reached by Rorer, in respect to statutory actions, in connection with the authorities relied on to sustain the text, the inevitable inference is, that a statute, providing a right of action for a personal injury, has no extra-territorial force, and does not confer a right of action for an injury inflicted in another State. See *McCar-thy* v. *The Chicago, Rock Island and Pacific Railroad Company*, 18 Kan. 46, and the authorities cited in that case.

Section 24 of our code, 2 R. S. 1876, p. 43, confers upon every unmarried woman the right to prosecute an action for her own seduction; but under the construction given, and, as we believe, correctly given, as above stated, to anal-ogous statutes, that provision of the code has no extra-territorial force, and does not authorize such an action to be

maintained in this State for acts of seduction committed in another State.

It is manifest from the evidence in this case, that, if the appellee was in fact seduced by the appellant, the seduction took place, and was fully accomplished, in the State of Illinois. The illicit intercourse, testified to as having occurred in this State, did not constitute a new and independent case of seduction as contended for by the appellee, but was merely consequential to the alleged seduction which had previously taken place.

But it may be insisted that, conceding that the *gravamen* of the appellant's supposed offence was shown to have been perpetrated in the State of Illinois, still the appellee was entitled to prosecute her action in this State in the spirit, and as a matter of comity between the two States. The rules governing the prosecution of actions by comity between states have no application to this case, for two reasons :

*First.* Nothing being shown to the contrary on the trial, we must assume that the common law was in force in Illinois on the subject of prosecutions for seduction. By the common law, the appellee acquired no right of action against the appellant for her own seduction, and hence, putting the worst possible construction upon the evidence as against the appellant, she did not bring with her from Illinois any right of action to be enforced in this State.

*Secondly.* If it had been shown upon the trial that there was some statute of Illinois conferring upon her a right of action for her own seduction, that would not have authorized the appellee to prosecute this action in the court below upon principles of comity, as it is only common-law rights, or such rights as are recognized as existing by the general usage of civilized nations, which can be enforced by comity in a foreign forum. Rorer on Inter-State Law, pp. 4, 5 and 6.

For the reasons given, we are of the opinion that the evi-

The D. V. Turnpike Co. v. The Board of Com'rs. Bartholomew County.

dence failed to show a cause of action entitling her to a recovery in any of the courts of this State, and that, in consequence, the judgment in this case can not be sustained.

The conclusion we have reached renders it unnecessary that we shall consider other objections urged to the sufficiency of the evidence.

The judgment is reversed, with costs, and the cause remanded for a new trial.