**TERRY FASHIONS, LTD. and Terry Curry, Appellants, (Defendant Below),**

v.

**ULTRACASHMERE HOUSE, LTD., Appellee, (Plaintiff Below).**

No. 4–383A86.

Court of Appeals of Indiana, Fourth District.

April 25, 1984.

Rehearing Denied May 31, 1984.

Alan H. Lobley, Ice Miller, Donadio & Ryan, Indianapolis, for appellants.

Robert Delano Jones, Susan Lacava, Rogers, McDonald & Jones, Bloomington, for appellee.

YOUNG, Judge.

Terry Fashions, Ltd. and Terry Curry (hereinafter referred to collectively as Curry), defendants below, appeal from the grant of a summary judgment in favor of Ultracashmere House, Ltd. (Ultracashmere), plaintiff below, upon a suit to enforce a New York judgment. Although Curry presents four issues on appeal,[1] the ultimate issue is whether the New York courts had personal jurisdiction over Curry.

Curry, an Indiana resident, signed an order form provided by Ultracashmere, a New York resident, at a trade show in Chicago in April 1979. Curry, a Bloomington retailer, was to purchase fabric from Ultracashmere. Immediately below Curry's signature, the order form contained the following language:

Notwithstanding anything herein to the contrary, the rights and obligations of Buyer and Seller hereunder are defined by, and shall be subject to, the Basic Trade Provisions now approved and promulgated as of January 15, 1948, by the National Retail Dry Goods Association and the Apparel Industries Inter-Association Committee, including the provision that all disputes or differences arising between the parties shall be settled by arbitration which may be initiated and conducted and any award therein confirmed in the manner described in such provisions and on service of process, accordingly.

One of the Basic Trade Provisions referred to in the arbitration clause provides:

For any purpose relating to this arbitration clause of any award rendered hereunder, the Purchaser and Seller consent to the jurisdiction of the Courts of the State in which the Seller has his principal place of business, and any legal process or paper may be served out side of such State by registered mail, or by personal service, provided that a reasonable time for appearance is allowed. Purchaser and Seller further consent that service in accordance herewith shall be sufficient to confer upon the Court jurisdiction in personam over the Purchaser and Seller.

In May and June 1979 a dispute arose between Curry and Ultracashmere concerning their rights, duties and obligations with respect to the order form and sale of the goods. Ultracashmere initiated arbitration proceedings against Curry in New York resulting in an award in favor of Ultracashmere. The award was confirmed by the Supreme Court of New York for the County of New York, and judgment was entered in March 1981 for $8,547.37. Curry was sent notice of all the New York proceed-

---

1. The first two issues challenge trial court's findings of fact on sufficiency grounds. The first challenges the court's finding that Ultracashmere commenced its performance immediately after April 8, 1979. The finding is based upon paragraph 6 of the Affidavit of Bart Schwartz. The second challenges the finding that payment was to be made in New York. Because place of payment is not germane to any issue in this case, any error as to place of payment is harmless.

The appellant's other two issues are essentially: 1) whether the writing is enforceable and mutually binding and 2) whether the order form was deceptive thus preventing the New York courts from getting jurisdiction by consent. Both of these have been rephrased and are discussed below.

ings but did not appear before the arbitrator or state court.

Ultracashmere filed suit on the New York judgment in Bloomington, Indiana, in March 1982. Curry, in her answer, raised the issue of the New York court's exercise of jurisdiction over her person. Ultracashmere filed a motion for summary judgment, and Curry filed a cross-motion for summary judgment. The court found for Ultracashmere and against Curry. Curry has appealed the summary judgment claiming the New York judgment was not entitled to enforcement in Indiana for lack of jurisdiction.

Foreign judgments are open to collateral attack in Indiana for lack of jurisdiction. *Condos v. Sun State Painting, Inc.*, (1983) Ind.App., 450 N.E.2d 86; *County of Ventura v. Neice*, (1982) Ind.App., 434 N.E.2d 907; *Podgorny v. Great Central Insurance Co.*, (1974) 160 Ind.App. 244, 311 N.E.2d 640. In assessing such attacks, Indiana courts apply the law of the sister state. *Condos, supra; Cox v. First National Bank of Woodlawn*, (1981) Ind. App., 426 N.E.2d 426; *Podgorny, supra.* Choice of law, however, is not dispositive of jurisdiction. *See Agrashell, Inc. v. Hammons Products Co.*, (2d Cir.1965) 344 F.2d 583. The party attacking jurisdiction in Indiana has the burden of proof of rebutting the presumption of the original judgment's validity and of showing that the sister state lacked jurisdiction. *Condos, supra; Neice, supra; Cox, supra.*

Ultracashmere's jurisdictional claim is based on a written agreement to arbitrate. Under New York law, consent to arbitrate also constitutes a consent to jurisdiction. *E.g., Gantt v. Felipe Carlos Hurtado & CIA*, (1948) 297 N.Y. 433, 79 N.E.2d 815. In applying this rule, New York courts have enforced foreign judgments against New York residents, *Prosperity Co. v. American Laundry Machinery Co.,*

(1947) 297 N.Y. 486, 74 N.E.2d 188; *Gilbert v. Burnstine*, (1931) 255 N.Y. 348, 174 N.E. 706, and have enforced agreements requiring New York residents to arbitrate in foreign countries. *Amtorg Trading Corp. v. Camden Fibre Mills, Inc.*, (1952) 304 N.Y. 519, 109 N.E.2d 606. More frequently, New York courts have interpreted the rule to require nonresidents to arbitrate in New York or to confirm New York arbitration awards. *E.g., Gantt, supra; Samincorp South American Minerals and Merchandising Corp. v. Tikvah Mining Co.*, (1964) 43 Misc.2d 27, 250 N.Y.S.2d 151.

The Second Circuit of the United States Court of Appeals underscored the strength of the New York policy when it said that a party who agrees to arbitrate in New York "makes himself as amenable to suit as if he were physically present in New York." *Farr & Co. v. CIA Intercontinental de Navegacion*, (2d Cir.1957) 243 F.2d 342, 347. New York courts have even interpreted clauses which did not specify the site of arbitration but incorporated rules placing the arbitration in New York as conferring jurisdiction on New York courts. *American-British T.V. Movies, Inc. v. KOPR-TV, Copper Broadcasting Co.*, (1955) Sup., 144 N.Y.S.2d 548; *Bradford Woolen Corp. v. Freedman*, (1947) 189 Misc. 242, 71 N.Y. S.2d 257.[2]

Thus, if the arbitration clause on the order form signed by Curry is binding and valid under New York law, she consented to jurisdiction of the New York courts when she manifested her agreement to arbitrate by signing the form.

## I.

Curry contends that no enforceable arbitration agreement exists because Ultracashmere never signed the order form on which the arbitration clause appears nor accepted the order in writing. Curry argues that, without such an acceptance, Uni-

---

**2.** Curry argues that *American-British, supra,* and *Bradford Woolen, supra,* are no longer good law because they rely on N.Y.Civ.Prac.Law § 1450, which has been repealed. The argument ignores the fact that § 1450 has been incorporat-

ed into N.Y.Civ.Prac.Law § 7501 (McKinney 1980) and that the advisory commission intended no change from prior law in the jurisdictional provisions. *See* N.Y.Civ.Prac.Law § 7501 practice commentary C7501:3 (McKinney 1980).

form Commercial Code statute of frauds requirements would not be met and the agreement would not be enforceable against Ultracashmere. Because New York law requires that both parties be bound by an arbitration agreement if it is to be binding on either, Curry contends the agreement is unenforceable.

■ New York law requires arbitration agreements to be mutually binding to be enforceable. *Hull Dye & Print Works, Inc. v. Riegel Textile Corp.*, (1971) 37 A.D.2d 946, 325 N.Y.S.2d 782; *Kaye Knitting Mills v. Prime Yarn Co.*, (1971) 37 A.D.2d 951, 326 N.Y.S.2d 361. In those cases, agreements that gave one party an option between litigation and arbitration were described as not mutually binding and were held to be unenforceable. The agreement between Curry and Ultracashmere, however, contained no such option.

■ Arbitration agreements in New York are subject to a special statute of fraud requirement which, unlike the U.C.C. requirements, does not demand the signature of the party to be bound. *Compare* N.Y.Civ.Prac.Law § 7501 (McKinney 1980) (arbitration) with N.Y.U.C.C. § 2–201 (McKinney 1964) (sale of goods). New York requires that arbitration agreements be in writing, *Riverdale Fabrics Corp. v. Tillinghast-Stiles Co.*, (1954) 306 N.Y. 288, 118 N.E.2d 104, but does not require that the writing be signed by the parties to be binding. *E.g., Helen Whiting, Inc. v. Trojan Textile Corp.*, (1954) 307 N.Y. 360, 121 N.E.2d 367; *Copen Associates Inc. v. Dan River Inc.*, 18 U.C.C.Rep.Serv. 62 (Callaghan 1975); *In re Les Belles Enterprises, Inc.*, 17 U.C.C.Rep.Serv. 909 (Callaghan 1975); *American-British, supra; Samuel Kaplan & Sons Inc. v. Fascinator Blouse Co.*, (1947) Sup., 70 N.Y.S.2d 8. Thus the arbitration agreement was binding on Ultracashmere though Ultracashmere had not signed it. The arbitration agreement could not be considered unenforceable as not mutually binding.

## II.

Curry then argues that the arbitration clause is invalid and does not confer jurisdiction on the New York courts because Curry neither noticed the clause nor was provided with the trade association rules placing the arbitration in New York state. Curry suggests this combination constitutes a deceitful and wrongful device to obtain jurisdiction.

■ Under New York law a party is not relieved of a contractual obligation by her failure to read a contract. The New York Court of Appeals has twice stated as much:

[A] party to a written contract ... is bound by the stipulations and conditions expressed in it whether he reads them or not. Ignorance through negligence or inexcusable trustfulness will not relieve a party from his contract obligations. He who signs or accepts a written contract, in the absence of fraud or other wrongful act on the part of another contracting party, is conclusively presumed to know its contents and to assent to them and there can be no evidence for the jury as to his understandings of its terms.

*Level Export Corp. v. Wolz, Aiken & Co.*, (1953) 305 N.Y. 82, 111 N.E.2d 218 (quoting *Metzger v. Aetna Insurance Co.*, (1920) 227 N.Y. 411, 125 N.E. 814).

In this case, the provision for arbitration appeared immediately below Curry's signature and was one of the few printed sentences on the page. As such she may not use her failure to read the clause to excuse her contractual obligation to be bound by arbitration.

Curry also claims that Ultracashmere's failure to attach a copy of the trade association provisions establishing New York as the place of arbitration was a deceptive device to obtain jurisdiction. Arguing that deception should not be enforced, Curry attempts to construe a case requiring that arbitration be specifically mentioned in a sales memoranda to require that the place of arbitration be stated as well. *See Riverdale, supra.* This broad interpretation of *Riverdale* to prohibit incorporation by ref-

erence quickly fades in the light of other New York cases.

Arbitration agreements which did not specify the place of arbitration but incorporated arbitration association rules setting New York as the place of arbitration have been held to confer jurisdiction on New York courts. *American-British, supra; Bradford Woolens, supra.* New York courts have routinely held trade association rules pertaining to arbitration to have been incorporated in arbitration agreements. *E.g., Level, supra; Gantt, supra; In re I.S. Joseph Co.,* (1976) 54 A.D.2d 665, 388 N.Y.S.2d 1. In *Level,* for example, the buyer claimed that, because he had not seen nor been provided a copy of the trade association rules, he was not bound by them. The court rejected his argument saying that, without evidence of misrepresentation by the seller, the buyer could not use his own ignorance as an excuse. Similarly, there is no evidence of impropriety or deception on Ultracashmere's part—only evidence of Curry's ignorance of the terms incorporated.

The arbitration agreement is valid and mutually binding. The trade association provision placing the arbitration in New York is not improper and is incorporated by reference into the arbitration agreement. A consent to arbitrate in New York constitutes a consent to jurisdiction of New York courts. Curry's signing of the sales order containing the arbitration clause, therefore, conferred jurisdiction on the New York courts. Accordingly, the trial court correctly enforced the New York judgment against Curry.

The decision of the trial court is affirmed.

CONOVER, P.J., and MILLER, J., concurs.