Brandon **LUCAS** and David Lucas,
**Appellants–Defendants,**

v.

**ESTATE OF Peter A. STAVOS**, Georgeanne Stavos, Administratrix,
**Appellee–Plaintiff.**

No. 41A01–9205–CV–162.

Court of Appeals of Indiana,
First District.

March 2, 1993.
Rehearing Denied April 19, 1993.

Steven Lovern, Schreckengast, Lovern & Helm, Indianapolis, for appellants-defendants.

John B. Drummy, Thomas E. Wheeler II, Kightlinger & Gray, Indianapolis, for appellee-plaintiff.

NAJAM, Judge.

## STATEMENT OF THE CASE

We are asked to decide whether a Louisiana child born out of wedlock qualifies as a dependent child under Indiana's wrongful death statute, IND.CODE § 34-1-1-2. Brandon Lucas and David Lucas ("Lucases") appeal from a partial summary judgment entered in the Johnson Circuit Court giving full faith and credit to a Louisiana paternity determination, granting the counterclaim of the Estate of Peter A. Stavos ("Estate") and holding that Lindsey Rose Stavos Elliott ("Lindsey") is the natural daughter of the decedent, Peter Stavos ("Peter"). We affirm.

## ISSUES

We consolidate and restate the issues presented on appeal as follows:

1. Was the Estate properly served in the Louisiana paternity action?

2. Were the Lucases required to be served in the Louisiana paternity action?

3. Should the Louisiana paternity determination be given full faith and credit in Indiana, or does Indiana's interest in the orderly, prompt, and final administration of estates preclude recognition of the Louisiana paternity determination?

4. Which Indiana law controls Lindsey's rights as a wrongful death beneficiary?

## STATEMENT OF THE FACTS

This case involves a wrongful death action filed under IND.CODE § 34-1-1-2. The action arose from a collision between automobiles driven by Brandon Lucas and Peter Stavos which occurred on August 5, 1988, in Carmel, Indiana. Both Brandon and Peter were injured in the collision, and Peter died from his injuries at the scene of the accident.

On July 27, 1990, Georgeanne Stavos, Peter's mother, ("Georgeanne") was appointed as the administratrix of his Estate. On July 31, 1990, Georgeanne moved for leave to file a counterclaim for wrongful death in an action the Lucases had brought against the Estate. On August 9, 1990, the motion was granted and the Estate's counterclaim for wrongful death was ordered filed. Subsequently, the Lucases' claim against the Estate was resolved by settlement.

On August 3, 1990, Lindsey's natural mother, Susan Campbell Elliott ("Susan"), filed a Petition to Filiate ("Petition") in the district court for the Parish of Jefferson, Louisiana, which was supported by an affidavit from Georgeanne. When the Petition was filed, Susan was, and had been, a resident and domiciliary of the State of Louisiana. Lindsey was born in Louisiana on April 28, 1987, and she had resided continuously in Louisiana since her birth. On September 20, 1990, the Louisiana district court granted the Petition.

On September 19, 1991, Georgeanne moved for partial summary judgment on the issue of whether Peter was survived by a dependent child within the meaning of IND.CODE § 34-1-1-2. Georgeanne supported her motion with a duly authenticated copy of the judgment from the Louisiana district court declaring Lindsey to be Peter's natural daughter. The Lucases filed a response to Georgeanne's motion for partial summary judgment and filed their own motion for partial summary judgment on the issue of Lindsey's status. On February 1, 1992, the trial court granted Georgeanne's motion for partial summary judgment holding, in effect, that Lindsey is a dependent child within the meaning of our wrongful death statute. The trial court denied the Lucases' motion for partial summary judgment.

This appeal followed. We will state other relevant facts as needed in our discussion of the issues.

## DISCUSSION AND DECISION

When reviewing the propriety of a ruling on a motion for summary judgment, this court applies the same standard applicable to the trial court. *Houin v. Burger* (1992), Ind.App., 590 N.E.2d 593, 596, *trans. denied.* We must consider the designated evidentiary matter sanctioned by Ind.Trial Rule 56(C) without determining its weight or credibility. *Id.* Summary judgment should be granted only if such evidence shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.* The movant bears the burden of proving the propriety of summary judgment, and all facts and inferences to be drawn therefrom are viewed in a light most favorable to the nonmoving party. *Id.* Summary judgment will be affirmed on appeal if it is sustainable on any theory or basis found in the evidentiary matter designated to the trial court. T.R. 56(C). In this appeal there are no issues of material fact in dispute. The essential question before us is whether, as a matter of law, we should grant full faith and credit to the Louisiana paternity determination. The validity of a foreign paternity determination and its impact on a wrongful death action is an issue of first impression in Indiana.

Initially, we must address which state's law governs the issues which the Lucases raise concerning the validity of the Louisiana paternity determination. Foreign judgments are subject to collateral attack in Indiana for lack of jurisdiction, and in assessing such attacks, we apply the law of the sister state where judgment was

rendered.[1] *Terry Fashions, Ltd. v. Ultra-cashmere* (1984), Ind.App., 462 N.E.2d 252, 254. The party attacking a foreign judgment in Indiana has the burden of rebutting the presumption that the judgment is valid and of showing that the sister state lacked jurisdiction. *Id.* Indiana is required to give a foreign judgment only the same effect as would the sister state which issued it. *Omni Micro, Inc. v. Hyundai Electronics America* (1991), Ind.App., 571 N.E.2d 598, 600. In order to prevail, the Lucases must demonstrate that the Louisiana trial court lacked jurisdiction in rendering its paternity determination under Louisiana law.

### Issue One: Was the Estate Properly Served in Louisiana?

The Lucases first claim that the Estate was not properly served notice of the Louisiana paternity action. We disagree.

■ A foreign judgment is always open to collateral attack for want of personal or subject matter jurisdiction, and a judgment void in the state where it was entered is also void in Indiana. *See P.M.S., Inc. v. Jakubowski* (1992), Ind.App., 585 N.E.2d 1380, 1382. However, a judgment which is merely voidable must be challenged by a direct attack in the state where it was rendered. *Aramovich v. Doles* (1964), 244 Ind. 658, 662, 195 N.E.2d 481, 483; *Stickler v. Mack* (1985), Ind.App., 473 N.E.2d 621, 623. The Lucases urge that because the Estate was not served with process, there was no personal jurisdiction over the Estate and the judgment is void. However, the Lucases fail to note that under Louisiana substantive law, the defense of lack of service, or of improper service of process, is a personal defense and may not be raised by any other party or person. *See Trew v. Standard Supply & Hardware Co.* (1947), La.App., 33 So.2d 426, 430. The Estate did not raise this issue, and the Lucases lack standing to raise this issue. Thus, insofar as this appeal is concerned, whether the Estate was served is of no consequence.

### Issue Two: Were the Lucases Properly Served or Given Notice of the Louisiana Paternity Action?

The Lucases next allege they were not properly served or otherwise given notice of the Louisiana paternity action, and they reiterate their contention that the judgment entered in Louisiana was a nullity and should not be honored in Indiana. We find that the Lucases have failed to show that under Louisiana law they were indispensable parties entitled to notice of the paternity proceedings. Further, they waived any objection to the paternity proceeding by not seeking relief from the judgment in the manner provided under Louisiana law.

■ At the outset we address the Lucases' contention regarding the judgment's effect. The operation and effect of a judgment are purely matters of law and are not affected by what the court or the parties may understand. 49 C.J.S. *Judgments* § 444 (1947 & Supp.1992) (and citations therein). Under Indiana procedural law, the term "void" properly denotes only those actions in which a judgment has no effect whatsoever, and is incapable of confirmation or ratification. *Trook v. Lafayette Bank and Trust Co.* (1991), Ind.App., 581 N.E.2d 941, 944, *trans. denied.* On the other hand, the term "voidable" denotes an action in which a judgment nonetheless operates to accomplish the result sought to be accomplished, until the fatal flaw is judicially ascertained and declared. *Id.* A voidable judgment is thus capable of confirmation or ratification. *Id.* Judgments rendered where personal jurisdiction may be lacking are not void but voidable because the defect may be cured or waived. *Id.* at 945. Because the Lucases assert that the judgment was void for lack of service of process and, hence, lack of personal jurisdiction over them, the judgment was merely voidable.

■ Since the Lucases make a collateral attack on the paternity determination, Louisiana substantive law controls the is-

---

**1.** The Lucases' citation to authorities other than those of Louisiana on this issue is thus inappro-

priate because the controlling precedents on which we must rely are those of Louisiana.

sue of the Lucases' right, if any, to participate in the paternity proceeding. *Terry Fashions*, 462 N.E.2d at 254. Pursuant to La.Civ.Code Ann. art. 207 (West 1952 & Supp.1992), the Lucases had a right to contest the Petition to Filiate and to intervene in the underlying paternity proceeding. *See Willis v. Jackson Brewery Development, Inc.* (1988), La.App., 522 So.2d 720, 721. However, the Lucases fail to acknowledge that the Louisiana Code of Civil Procedure ("Code") distinguishes between indispensable and necessary parties, and it is that essential distinction which is dispositive of this issue.

Article 641 of the Code defines and regulates the joinder of indispensable parties:

"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.

No adjudication of an action can be made unless all indispensable parties are joined therein."

La.Code Civ.Proc.Ann. art. 641 (West 1960 & Supp.1992).

Article 642 of the Code defines and regulates the joinder of necessary parties:

"Necessary parties to an action are those whose interests in the subject matter are separable and would not be directly affected by the judgment if they were not before the court, but whose joinder would be necessary for a complete adjudication of the controversy.

An adjudication of an action may be made even if all necessary parties are not joined therein, but when *timely objection* is made to the nonjoinder of a necessary party the court shall require his joinder if he is subject to its jurisdiction."

La.Code Civ.Proc. art. 642 (West 1960 & Supp.1992) (emphasis added).

In *State, Department of Highways v. Lamar Advertising Co.* (1973), La., 279 So.2d 671, the Louisiana Supreme Court considered and described the procedural consequences of this distinction, as follows:

"The failure to join an indispensable party may be raised at any time or may even be noticed by the trial or appellate court on its own motion. Articles 645, 927. On the other hand, the failure to join a merely necessary party, See Article 642 below, must be raised by a dilatory exception, Article 645, and is waived if not timely raised in limine. Articles 926, 928."

*Id.* at 674.

Recognizing "the possible harsh result" if a party is ruled indispensable, the Louisiana Supreme Court in *Lamar* concluded that under Louisiana law a party should be considered indispensable, "only after the facts clearly establish that no complete and equitable adjudication of the controversy can be made in his absence," *id.* at 675, and that "parties should be deemed indispensable only when that result is absolutely necessary to protect substantial rights." *Id.* at 677; *see also Franklin Printing Co. v. Dorion* (1988), La.App., 532 So.2d 885, 886 (following rule in *Lamar,* reversed and remanded for trial court to make factual determination whether there was sufficient evidence to indicate that third party was indispensable).

Thus, when Louisiana law is applied in the instant case, we find that while the Lucases may have had the right to participate in the Louisiana paternity proceeding, that right was permissive rather than mandatory. The Lucases were necessary but they were not indispensable parties.[2] Here, the Louisiana paternity determination is not void, and while it may have been voidable under Louisiana law if the Lucases had made timely objection to their nonjoinder, it is not now subject to collateral attack in Indiana.

2. At oral argument, held in Indianapolis on January 12, 1993, the Estate argued that Lindsey's paternity and thus, her status in relation to the Estate, could have been established in the wrongful death case itself. In that procedural context, the Lucases would have been defendants and could have challenged the paternity determination in that proceeding. However, we must address the issues in the procedural context in which they appear.

Although we hold that the Louisiana judgment is not subject to collateral attack, the question remains whether the judgment on Lindsey's status is binding on the Lucases. The Lucases were not served with process and, hence, the Louisiana district court did not exercise personal jurisdiction over them. On this issue, the Restatement (Second) of Judgments § 31 (1982), provides:

\* \* \* \* \* \*

"(2) A judgment in an action whose purpose is to determine or change a person's status is conclusive with respect to that status upon all other persons, with the following qualifications:

(a) If a person has, under applicable law, an interest in such status such that he is entitled to contest its existence, *the judgment is not conclusive upon him unless he was afforded an opportunity to be a party to the action; ...."*

*Id.* (emphasis added).

The Lucases rely heavily on the Louisiana Court of Appeals decision in *Willis,* in which the Court held that the filiation determination was not binding on wrongful death defendants who had been *denied* their request to participate in a hearing on that issue. *See Willis,* 522 So.2d at 721. The court in *Willis* held that, as a matter of due process, any person with an interest in a filiation proceeding must be given an opportunity to participate in the proceeding to be bound by the result. The Lucases claim that the filiation determination occurred without their knowledge and that they cannot be held accountable for failing to intervene or otherwise participate in that proceeding. However, the Lucases did not exercise any post-judgment remedies, either to set aside or appeal the filiation determination, and we cannot say the Lucases were either denied or were not afforded an opportunity to be parties to the action when they failed to seek direct relief from the Louisiana judgment in Louisiana. *Cf. Aramovich,* 244 Ind. at 662, 195 N.E.2d at 483 (in collateral attack on judgment of

adoption, record showed representatives of estate of deceased natural father attempted to intervene but were denied opportunity).

We find that the Lucases were necessary parties in the paternity action. Their failure to raise the issue in the Louisiana district court and to seek or obtain joinder or other review and relief available to them in Louisiana [3] precludes them from asserting lack of service of process as grounds for a collateral attack in Indiana. Thus, despite the due process considerations recognized in *Willis,* in this case the Lucases have waived their right to contest the Louisiana paternity determination. For these reasons, under Louisiana law, the Lucases' collateral attack on the Louisiana paternity determination must fail.

*Issue Three: Is The Louisiana Judgment Entitled to Full Faith and Credit in Indiana?*

In addition to their collateral attack on jurisdictional grounds, the Lucases argue that the Louisiana paternity determination should not be given full faith and credit in Indiana. We disagree.

■ Lindsey's personal status is determined by the law of her domicile, Louisiana, *see Harvey v. Ball* (1869), 32 Ind. 98, 100, and this rule of law is controlling here. The full faith and credit clause in The Constitution of the United States, Article IV, § 1, provides that, "Full Faith and Credit shall be given in each State to the Public Acts, Records and Judicial Proceedings of every other State." This clause imposes an obligation on each state to enforce the rights and duties validly created under the laws of other states, and there is a constitutional presumption that the judgment of a state court should be afforded the same credit, validity and effect in every other court of the United States which it had in the state where it was pronounced. *Underwriters National Assurance Co. v. North Carolina Life and Accident* (1982),

---

**3.** For instance, Louisiana statutes provide for an Action of Nullity to rectify defects in the trial court's proceedings post-trial, whether for vices of form or substance. *See* La.Code of Civ.Proc. Ann. arts. 2001–2006 (West 1990 & Supp.1992).

455 U.S. 691, 704, 102 S.Ct. 1357, 1365, 71 L.Ed.2d 558, 570.

 However, a foreign judgment is conclusive upon the merits in another state's courts only if the court in the first state had jurisdiction to decide the case on its merits. *Id.* at 704–05, 102 S.Ct. at 1366, 71 L.Ed.2d at 570–71. Thus, before an Indiana court is bound by a foreign judgment, it may inquire into the jurisdictional basis for that judgment; if the first court did not have jurisdiction over the subject matter or relevant parties, full faith and credit need not be given. *Id.* This concept of full faith and credit is central to our system of jurisprudence. *Id.* at 703, 102 S.Ct. at 1365, 71 L.Ed.2d at 570. A judgment from a sister state which is regular and complete on its face is presumed valid, and one who attacks the jurisdiction of a court from the sister state which issued the judgment must rebut that presumption. *See Omni Micro,* 571 N.E.2d at 600. The Lucases base their attack on the paternity determination's validity on grounds of personal service and jurisdiction, allowable collateral attacks which we have already resolved against them in *Issue One* and *Issue Two. See Condos v. Sun State Painting, Inc.* (1983), Ind.App., 450 N.E.2d 86, 88 (all foreign judgments are open to collateral attack in Indiana for lack of jurisdiction). They advance no other arguments and point to no alleged inadequacies on the merits of the paternity determination,[4] nor do we note any such inadequacies on the face of the Louisiana paternity determination. Indeed, given our resolution of the Lucases' jurisdictional challenges, it seems implausible to dispute the validity of the Louisiana paternity determination. Lindsey, as a resident of Louisiana at all times pertinent to this case, was not required to adhere to Indiana's five (5) month time

limitation under IND.CODE § 29–1–2–7(b) or IND.CODE § 31–6–6.1–6(d) in filing her paternity action; rather, Louisiana law controlled her paternity proceedings, at least as they pertained in Louisiana to recognition of Peter as her father.[5]

 Nevertheless, even where the judgment of a sister state is valid and immune from collateral attack, the full faith and credit clause does not compel a forum state to subordinate its policies and interests to the conflicting policies of another state. *See Pink v. A.A.A. Highway Express* (1941), 314 U.S. 201, 210, 62 S.Ct. 241, 246–47, 86 L.Ed. 152, 158. The full faith and credit clause does not require one state to apply another state's laws in violation of its own legitimate public policy. *Ballard v. Board of Trustees* (1983), Ind. App., 452 N.E.2d 1023, 1026, *trans. denied.* Thus, the Lucases also contend that allowing a paternity determination beyond the five (5) month statutory period allowed in Indiana under IND.CODE § 29–1–2–7(b) and IND.CODE § 31–6–6.1–6(d) would violate Indiana's interest in providing for the orderly, prompt, and final administration of estates. We find that this concern does not affect our conclusion that Indiana should give full faith and credit to the Louisiana paternity determination, subject only to Indiana's two (2) year time period for filing a wrongful death claim. *See* IND.CODE § 34–1–1–2.

Policy considerations would be more relevant if this dispute only involved the administration of an estate. Here, however, our primary concern is with a dependent child's right to participate in a wrongful death action concerning the child's parent. The inheritance and paternity statutes do not control without qualification under these circumstances. We find that the policies which the Lucases invoke favoring the

---

**4.** Moreover, the paternity judgment on its face shows that the Louisiana trial court heard testimony, arguments, and evidence before rendering its decision, *see* Record at 23, a process consistent with the appropriate procedure for establishing paternity under La.Civ.Code Ann. art. 203 (West 1952 & Supp.1992). *Cf.* La.Civ. Code Ann. art. 209 (West 1952 & Supp.1992) (time limit of one (1) year from death of putative parent or within nineteen (19) years of

child's birth, whichever occurs first, to bring paternity action if art. 203 procedure not used).

**5.** However, whether this determination meets the Indiana requirements necessary to qualify Lindsey to share in the Estate or to participate in the wrongful death action are separate issues. *See Issue Four.*

prompt and expeditious administration of estates are not so persuasive when dealing with a wrongful death claim.

The facts here are persuasive. Peter's permanent residence was with Lindsey and her mother in Louisiana, Peter openly acknowledged Lindsey as his daughter, and Lindsey's parents planned to marry. Thus, in reality, Lindsey's paternity, and concomitantly her right to share in any proceeds from a wrongful death action, cannot seriously be disputed. Therefore, the policies underlying the prompt settlement of estates are not violated; a wrongful death action operates independently from the administration of a decedent's estate, and our resolution of this issue respects the appropriate level of comity between Indiana and Louisiana courts. Hence, the Louisiana paternity determination is entitled to full faith and credit in Indiana.[6]

### Issue Four: Which Indiana Law Controls Lindsey's Rights as a Wrongful Death Beneficiary?

■ The Lucases contend that choice of law controls Lindsey's rights as a wrongful death beneficiary. They argue that Indiana substantive law controls under the common law choice-of-law rule for torts which applies the law of the place where the wrong is committed. *Hubbard Manufacturing Co. v. Greeson* (1987), Ind., 515 N.E.2d 1071, 1073. The Lucases reason that Lindsey's right of inheritance and, concurrently, her status as a wrongful death beneficiary, are necessarily subject to the Indiana inheritance and paternity statutes which require that an action to establish the paternity of an illegitimate child be filed within five (5) months after the alleged father's death. IND.CODE § 29–1–2–7(b) and IND.CODE § 31–6–6.1–6(d). Thus, the Lucases conclude that under

Indiana law the Louisiana paternity determination is untimely and cannot apply to the Indiana wrongful death action.

Similarly, the Estate contends that Lindsey's right as a dependent child within the meaning of the wrongful death statute is governed by the substantive law of her domicile, Louisiana. The Estate reasons that if Indiana gives full faith and credit to Lindsey's status under the Louisiana paternity judgment, that status determination is also conclusive upon Lindsey's right to participate in the Indiana wrongful death action.

However, we find that there is no bona fide choice of law question. This action arises from a death which occurred in Indiana, and Indiana is the only state in intimate contact with the facts surrounding that occurrence. *See Clow Corp. v. Ross Township School Corp.* (1979), 179 Ind. App. 125, 130, 384 N.E.2d 1077, 1082. Having already determined Lindsey's status as Peter's child under Louisiana law, *See Issue Three; cf. Harvey,* 32 Ind. at 100 (personal status can be determined only by law of domicile), it is apparent that Indiana substantive law controls Lindsey's right to participate in the wrongful death action.

■ Therefore, the final question presented is not which state's law controls but which Indiana law applies under these circumstances. Parts of the wrongful death statute, the inheritance statute, and the paternity statute are interrelated. *See:* IND.CODE § 34–1–1–2, IND.CODE § 29–1–2–7(b) and IND.CODE § 31–6–6.1–6; *Hollingsworth v. Taylor* (1982), Ind.App., 442 N.E.2d 1150, 1152. It is our task to interpret and apply these statutes within the specific factual and procedural context presented.

We also note that our resolution of this issue on the basis of full faith and credit makes an analysis under the Equal Protection Clause of the Constitution unnecessary; thus, we do not address the parties' arguments on that basis. We note in passing, however, that we already have held that IND.CODE § 29–1–2–7(b) is constitutional in view of attacks on the basis of equal protection. *See S.V.,* 579 N.E.2d at 147–48; *S.M.V.,* 443 N.E.2d at 109–10.

---

6. Therefore, the parties' citations to, and disagreements regarding the interpretation of, *S.V. v. Estate of Bellamy* (1991), Ind.App., 579 N.E.2d 144, and *S.M.V. v. Littlepage* (1983), Ind.App., 443 N.E.2d 103, *trans. denied,* are extraneous to our resolution of this issue. Neither case discussed the full faith and credit to be accorded an out-of-state adjudication of paternity and the resulting interaction of such a determination with a wrongful death action filed in Indiana.

The Lucases argue that Lindsey failed to institute her paternity action in a timely manner and that her participation in the wrongful death action is thus time-barred by Indiana inheritance and paternity statutes. We decline to apply those statutes in this context for two distinct reasons.

First, this is a wrongful death action, a statutory proceeding brought by the personal representative of the decedent's estate on behalf of a statutory beneficiary and not a paternity action against the decedent's estate which seeks to establish a general right of inheritance. While IND. CODE § 34-1-1-2 provides that wrongful death proceeds are "distributed in the same manner as the personal property of the deceased," that reference to the manner of distribution does not in itself subject a wrongful death action to the inheritance or paternity action time limitations. The time limitations under IND.CODE § 29-1-2-7(b) are not all-inclusive; the statute does not prohibit all paternity actions commenced more than five months after the putative father's death. *S.V. v. Estate of Bellamy* (1991), Ind.App., 579 N.E.2d 144, 148.

■ Second, because we have found that Lindsey's Louisiana paternity determination is entitled to full faith and credit in Indiana, *see Issue Three*, her participation in the wrongful death action should not be barred by either the inheritance or paternity statute time limitations under IND. CODE § 29-1-2-7(b) and IND.CODE § 31-6-6.1-6(d).[7] The Estate filed the wrongful death claim within the two (2) year time period for wrongful death claims found in IND.CODE § 34-1-1-2, and this statute controls. Where paternity has been established, an illegitimate child may qualify as a dependent child within the meaning of our wrongful death statute. *Hollingsworth*, 442 N.E.2d at 1152. As a dependent child, Lindsey may participate as the statutory beneficiary of any proceeds

which may be recovered in the wrongful death action against the Lucases.[8]

Further, we cannot require courts and litigants in other states to be omniscient with respect to Indiana law. Neither state nor federal comity requires such a broad extraterritorial reach, nor do we sanction such an expansive reading of our statutes and their application outside of Indiana. Where, as in a paternity action, rights and remedies are created by statute and not by common law, the statute operates within the state where it was enacted but has no extraterritorial force or effect upon actions arising in other jurisdictions. *See Buckles v. Ellers* (1880), 72 Ind. 220, 224, *modified on other grounds, Burns v. Grand Rapids and Indiana Railroad Co.* (1887), 113 Ind. 169, 176-77, 15 N.E. 230, 233-34.

Here, we simply decline to require an out-of-state child to comply with IND. CODE § 29-1-2-7(b) or IND.CODE § 31-6-6.1-6(d), and to bring a paternity action within five (5) months after the father's death when it is the law of the child's domicile which controls the child's status. *See Harvey*, 32 Ind. at 100. In this wrongful death action involving a non-resident illegitimate child, we find that the two (2) year time period within which a wrongful death action must be commenced under IND.CODE § 34-1-1-2 is sufficient to protect Indiana's interests.

## CONCLUSION

The Louisiana court had jurisdiction to decide paternity, and the Louisiana judgment is entitled to full faith and credit in Indiana. Allowing Lindsey to participate as a dependent child in the wrongful death action does not frustrate Indiana's interest in the orderly, prompt, and final administration of estates. The Louisiana paternity determination qualifies Lindsey to participate in the Indiana wrongful death action as a dependent child, and she may receive any proceeds to which she may otherwise

---

**7.** We emphasize that a different case would be presented if Lindsey had been born in Indiana and were an Indiana resident.

**8.** Because our decision to allow Lindsey's participation in the wrongful death action is founded

on the full faith and credit accorded her Louisiana paternity determination, we need not address the question raised by the parties whether IND.CODE § 29-1-2-7(b) is a statute of limitations or a non-claim statute.

be entitled in a wrongful death action. We affirm the trial court's grant of partial summary judgment and remand for further proceedings in accordance with this opinion.[9]

Affirmed.

BAKER and MILLER, JJ., concur.

---

9. We note that although we have held that Lindsey qualifies as a dependent child, to prevail on her claim, Lindsey must still prove all of the other prerequisites for recovery under the wrongful death statute. *See* IND.CODE § 34–1– 1–2; *Mehler v. Bennett* (S.D.Ind.1984), 581 F.Supp. 645, 648 (describing burden on dependent to establish need or necessity of support and dependency on decedent in successful wrongful death action) (applying Indiana law).