659 N.E.2d 593 (1995)
In the Matter of L.C., a Minor Child.
Lawrence T. NEWMAN and Beverly R. Newman, Appellants-Respondents,
v.
WORCESTER COUNTY DEPARTMENT OF SOCIAL SERVICES, Appellee-Petitioner.
No. 49A05-9405-CV-194.
Court of Appeals of Indiana.
December 12, 1995.
Rehearing Denied February 6, 1996.
*595 Lawrence T. Newman, Beverly R. Newman, Indianapolis, pro se.
J. Joseph Curran, Jr., Attorney General, MD, Wendy Greenberg, Baltimore, MD, Michael P. Bishop, Indianapolis, for appellee.
*594 RUCKER, Judge.
The Circuit Court of Worcester County, Maryland entered an order removing the minor child, L.C., from the home of Lawrence and Beverly Newman. The Worcester County Department of Social Services (WCDSS) then sought to enforce the order through the Marion County Superior Court. After conducting a hearing, the trial court gave full faith and credit to the Maryland Court order and directed that L.C. be removed from the Newman home. The Newmans now appeal raising five issues for our review which we consolidate and rephrase as follows:
1. Whether the trial court erred in denying the Newmans' request for continuance.
2. Whether the trial court erred in affording the Maryland Court order full faith and credit.
Finding no error, we affirm.
This is a companion case to Matter Of The Adoption Of L.C. (1995), Ind.App., 650 N.E.2d 726 wherein we affirmed the trial court's decision dismissing the Newmans' petition to adopt L.C. The essential facts providing the bases for the instant appeal are these. On March 29, 1993 WCDSS placed *596 with the Newmans for possible adoption then three year old L.C. and her two brothers, seven year old twins, R.C. and M.C. Prior to placement the states of Maryland and Indiana had entered into an Interstate Compact Agreement in accordance with the Interstate Compact for the Placement of Children (Compact). The state of Maryland as the sending agency retained jurisdiction over the children for all matters concerning their care and custody. In accordance with the Compact the Children's Bureau of Indianapolis was appointed to supervise the children's placement in the Newman home. The Children's Bureau assigned Patricia Reidl as the caseworker. Also, the Newmans, WCDSS, and the Children's Bureau entered into a Placement Agreement which provided in part that WCDSS had the right to remove the children at any time prior to adoption if, in WCDSS's opinion, removal was in the children's best interest.
In September 1993, inspired by numerous problems with the twins, the Newmans requested WCDSS to remove M.C. from their home. Three months later the Newmans made a similar request concerning R.C. Ultimately both boys were returned to the state of Maryland. In December 1993 the Newmans contacted Ann Turner another social worker assigned to the case and informed her that they wanted to adopt L.C. immediately. Concerned about the Newmans' parenting skills and methods of discipline, Turner met with L.C.'s court appointed attorney and officials of WCDSS to discuss L.C.'s placement with the Newmans. The parties agreed that a psycho-social evaluation of L.C. and the Newmans was necessary to determine if the adoption should proceed. Reidl then met with the Newmans to discuss the required evaluations. However, because the Newmans insisted on a series of pre-conditions, the evaluations never took place. Less than two weeks thereafter, on January 24, 1994, the Newmans faxed a letter to Reidl demanding, among other things, that any further communication between them and Reidl should be in writing. Within ten days of the receipt of the letter, Reidl notified the Indiana Interstate Compact Office concerning the impasse that she had reached with the Newmans. After efforts to work with the Newmans proved unproductive, WCDSS and the Children's Bureau concluded that it would be in L.C.'s best interest if the minor child were placed with or near her brothers in Maryland. They also concluded that continued placement with the Newmans would impair L.C.'s security and jeopardize her physical and emotional development.
On March 21, 1994 WCDSS filed in the Worcester County Circuit Court a Motion for Change of Placement. WCDSS did not join the Newmans as parties to the action and the Newmans were neither served with notice of the motion nor made aware of the time or date of the hearing. The Circuit Court of Worcester County entered an order granting the WCDSS motion on March 22,1994. Two days later, March 24,1994, WCDSS presented the Maryland order to the Marion County Superior Court through a Petition to Enforce Foreign Order for Change of Placement. The Newmans were served with notice the following day and a hearing was scheduled for March 29,1994.
On the day of the hearing the Newmans appeared without counsel. Lawrence Newman, an attorney licensed to practice law in the State of Indiana, acting pro se, requested a continuance which the trial court denied. After the hearing concluded the trial court ordered that L.C. should remain in the Newman home and allowed the parties six weeks to brief the issues raised at the hearing and to present supporting documentation on their respective positions. On May 12, 1994 the trial court rendered its decision concluding, among other things, that it was required by Article 4, Section 1 of the Constitution of the United States to give full faith and credit to the order of the Circuit Court of Worcester County, Maryland. Consequently the trial court entered an order directing the Newmans to return L.C. to WCDSS. Pursuant to a Writ of Execution to enforce the order, WCDSS removed L.C. from the Newman home on May 28, 1994 and returned her to the State of Maryland. The Newmans now appeal.

I.
The Newmans first contend the trial court erred in denying their request to continue *597 the March 29, 1994 hearing. According to the Newmans they needed additional time to obtain counsel, properly prepare for the hearing, and obtain records filed with the Maryland court.
The grant or denial of a motion for continuance rests in the sound discretion of the trial court and will be reversed only for abuse of that discretion. Strutz v. McNagny (1990), Ind.App., 558 N.E.2d 1103, trans. denied. The record shows the Newmans filed a written motion requesting a continuance of not less than two weeks. After the motion was denied, the hearing proceeded with appellant Lawrence Newman acting pro se. A member of the bar of this state, Mr. Newman presented cogent and well reasoned arguments to the trial court, raised timely and appropriate objections, and effectively cross-examined witnesses presented by WCDSS. At the close of the hearing, the trial court allowed the parties two weeks to submit legal briefs in support of their respective positions. Both sides complied. After the initial briefs were submitted, the trial court then allowed an additional four weeks for the parties to file supplemental and reply briefs.
Although abuse of discretion will be found in the denial of a motion for continuance when the movant has shown good cause for granting the motion, no abuse of discretion will be found when the movant is not prejudiced by the denial. Hudgins v. McAtee (1992), Ind.App., 596 N.E.2d 286. Even assuming for the sake of argument the Newmans demonstrated good cause to support their motion for continuance, they have not shown prejudice by the denial of their motion. Mr. Newman effectively represented the Newmans' position at the hearing. Also, availing themselves of the court's briefing schedule, the Newmans filed five post-trial briefs totaling over 120 pages which included numerous exhibits. By way of their post-trial briefs, the Newmans were afforded ample opportunity to present whatever additional evidence or argument they might otherwise have presented had the hearing been continued for two weeks. We find no abuse on this issue.

II.
The Newmans next contend the trial court erred in granting full faith and credit to the judgment of the Maryland Circuit Court. First, according to the Newmans, because they were neither given notice nor served with process concerning the Maryland proceedings, the Maryland Circuit Court had no jurisdiction over them and thus the judgment rendered by that court is void.

A.
Article IV Section 1 of the United States Constitution provides "Full Faith and Credit shall be given in each State to the Public Acts, Records and Judicial Proceedings of every other State." This clause imposes an obligation on each state to enforce the rights and duties validly created under the laws of other states. Underwriters National Assurance Co. v. North Carolina Life and Accident (1982) 455 U.S. 691, 102 S.Ct. 1357, 71 L.Ed.2d 558. There is a presumption that the judgment of a state court should be afforded the same credit, validity and effect in every other court of the United States which the judgment had in the state where it was pronounced. Id. However, only where the court in the first state had jurisdiction to decide the case on its merits, is a judgment from that state conclusive upon the merits in another state's courts. Id. Consequently, before an Indiana court is bound by a foreign judgment, it may inquire into the jurisdictional basis for that judgment. If the first court did not have jurisdiction over the subject matter or relevant parties, then full faith and credit need not be given. Id.
Citing Wilmer v. Epstein (1911), 116 Md. 140, 81 A. 379, 381, the Newmans contend that in the state of Maryland, a judgment entered without jurisdiction over one of the parties is "wholly void." (Cf. Lucas v. Estate of Stavos (1993), Ind.App., 609 N.E.2d 1114 reh'g denied, trans. denied; In Indiana a judgment entered without jurisdiction over the parties is merely voidable rather than void). Thus, the Newmans contend, the judgment here is not entitled to full faith and credit by the courts of this state.
*598 We have no quarrel with the continued validity of Wilmer. However the question presented here is whether the Newmans were parties to the Maryland court proceedings in the first place. If the Newmans were parties to that proceeding, then under Maryland law the judgment entered is void because the Maryland Circuit court never acquired jurisdiction over them. Wilmer, 81 A. 379, 381. On the other hand, if the Newmans were not parties to the Maryland court proceedings, then the judgment is not void, at least not on jurisdictional grounds. We conclude that the Newmans were not parties to the Maryland court proceedings and we begin our analysis with an instructive quote:
While, in a larger legal sense, the term "party" or "parties" has been defined as any or all persons who have a right to control the proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision, if an appeal lies, the term "party or parties to the action" is generally used to designate the person or persons who are seeking to establish a right and a person or persons on whom it is sought to impose a corresponding duty or liability, and the term "party to a proceeding" in its ordinary legal meaning is held to embrace such persons only as are parties in a legal sense, and to have been made or become such in some mode prescribed or recognized by the law, so that they are bound by the proceeding.
Whether a person is a party to an action must be ascertained exclusively by an inspection of the record. It can appear in no other way.
Hepp v. Hammer (1983), Ind.App., 445 N.E.2d 579, 581 quoting 22 I.L.E. Parties § 1 (1959). An inspection of the record in this case shows that the proceedings under which L.C. was made a ward of WCDSS were captioned "In The Matter Of The Petition For Guardianship Of A Minor." Record at 421. The February 12, 1993 decree provided among other things, that the WCDSS was "granted Guardianship with the Right to Consent to the Adoption and/or Long Term Care of [L.C.]...." Id. The Newmans were neither mentioned in the body of the decree nor were they named as parties to the guardianship action. Under a slightly modified caption[1] WCDSS filed a Motion For Change Of Placement on March 22, 1994. This time the Newmans were mentioned in the body of the pleadings, again however they were not named as parties to the action. Although we recognize that courts look beyond the caption and nominal parties in determining the actual parties to a proceeding, more importantly, it is not clear that under Maryland law the Newmans had any right to "control the proceedings, to make defense, to adduce and cross-examine witnesses, and to appeal from the decision." Hepp, supra. A third party who neither appears nor has a right to appear and produce evidence or cross examine witnesses or take an appeal, cannot be regarded as a party. Smith v. Midwest Mutual Ins. Co. (1972), 154 Ind. App. 259, 289 N.E.2d 788, 794.
Maryland trial rules apparently provide only one method by which one not named a party to an action may become an active litigant. Specifically, Maryland Rule 2-214 sets forth the procedure by which one may intervene in a pending action. That procedure includes the filing of a petition before the trial court.[2] Although the Newmans *599 very well may have prevailed on a timely filed petition to intervene, they filed no such petition and were never made parties to the Maryland Circuit Court proceedings. As a result, the Newmans' argument that the judgment is void for lack of jurisdiction must fail.
The Newmans contend they nonetheless should have been named as parties to the Change of Placement proceedings. In support they direct our attention to Maryland Rule 2-211 which provides in relevant part:
(a)Persons to be Joined.Except as otherwise provided by law, a person who is subject to service of process shall be joined as a party in the action if in the person's absence
(1) complete relief cannot be accorded among those already parties, or
(2) disposition of the action may impair or impede the person's ability to protect a claimed interest relating to the subject of the action or may leave persons already parties to a substantial risk incurring multiple or inconsistent obligations by reason of the person's claimed interest.
See also Fairbanks v. McCarter (1993), Md. App., 622 A.2d 121 (The requirement that necessary parties be joined exists to assure that a person's rights are not adjudicated unless that person has his or her day in court); Newark Trust Co. v. Talbot Bank (1958), 217 Md. 141, 141 A.2d 516 (All persons who are so interested, although indirectly, in the subject matter and the relief granted, shall be made parties to the suit).
Assuming without deciding that the Newmans were necessary parties to the Change of Placement proceedings as contemplated by Maryland Rule 2-211, they still cannot prevail. As previously noted, under Maryland law a judgment rendered without jurisdiction over one of the parties is wholly void. Wilmer, 81 A. 379, 381. However, the Newmans cite no authority and our own research reveals no authority suggesting that a Maryland judgment rendered without adding a necessary party is also wholly void. To the contrary such a judgment appears to be merely voidable. See e.g. Eyler v. Eyler (1992), 92 Md.App. 599, 609 A.2d 376 (Declaratory judgment entered without necessary party being joined vacated and cause remanded; however, there was no indication that judgment was void ab initio). The distinction between a void judgment versus a merely voidable judgment is critical to the Newmans' claim. While a void judgment is one which "has no effect whatsoever, and is incapable of confirmation or ratification" Lucas v. Estate of Stavos, (1993) Ind.App., 609 N.E.2d 1114, 1117, a voidable judgment "operates to accomplish the result sought to be accomplished, until the fatal flaw is judicially ascertained and declared." Id. Unlike a void judgment, a merely voidable judgment is not subject to collateral attack in this state and must be challenged in the state where it was rendered. Aramovich v. Doles (1964), 244 Ind. 658, 195 N.E.2d 481; Stickler v. Mack (1985), Ind.App., 473 N.E.2d 621; see also Sommers v. Equitable Bank (1988), Md. App., 543 A.2d 377, 379 ("[A] judgment or decree which is merely erroneous or voidable is not, with relatively rare exceptions, subject to collateral attack."). The Newmans did not challenge the Maryland judgment in the courts of that state, and the courts of this state are not prohibited from giving full faith and credit to judgments that are merely voidable.

B.
The Newmans also contend they had a Fourteenth Amendment due process right to notice and an opportunity to be heard in the Maryland court before the Change of Placement order was entered. In support the Newmans cite a number of cases for the proposition that prospective adoptive parents have legally protectible interests which afford them standing to contest a social agency's action in removing a child from a prospective adoptive parent's home.
The question of whether prospective adoptive parents have constitutionally protected interests in a child placed in their custody has not been decided by the courts of this state or the courts in the state of Maryland. And it is not appropriate that we decide the question here. Rather, it is appropriate only that we address whether the *600 failure to provide the Newmans with notice and an opportunity to be heard renders the Maryland court order void and thus not entitled to full faith and credit. We think not. As earlier indicated a judgment is a void judgment if the court that rendered it lacked jurisdiction over the subject matter or of the relevant parties. See Underwriters National 455 U.S. 691, 102 S.Ct. 1357. Although the Newmans ostensibly challenge the Maryland Circuit court's subject matter jurisdiction, their actual challenge is squarely addressed to that court's personal jurisdiction.[3] We have already determined that the Newmans' personal jurisdiction argument must fail. Thus, contrary to the Newmans' position, whether or not they had standing to contest the Maryland court order has no bearing on whether the judgment is void.

C.
Next the Newmans contend the Maryland court judgment should not be given full faith and credit for the additional reason that the court did not have personal jurisdiction over L.C. According to the Newmans whatever jurisdiction the state of Maryland may initially have had, it lost once WCDSS violated the terms of the Compact. The Compact provides in relevant part:
(a) The sending agency shall retain jurisdiction over the child sufficient to determine all matters relating to the custody, supervision, care, treatment and disposition of the child which the sending agency would have had if the child had remained in the sending agency's state, until the child is adopted, reaches majority, becomes self-supporting, or is discharged with the concurrence of the appropriate authority in the receiving state. The jurisdiction shall also include the power to effect or cause the child's return or transfer to another location and custody as provided by law. The sending agency shall continue to have financial responsibility for support and maintenance of the child during the period of placement.

Ind.Code § 12-17-8-1 and Md.Fam.Law Code Ann. § 5-606(a). (emphasis added). The record shows the Newmans and WCDSS entered into a placement agreement which provided in pertinent part "Larry and Beverly Newman, hereby agree to accept into [ ] our home [L.C.] from the Worcester Co. Dept. of Social Services on March 29, 1993, assuming complete financial responsibility for the child's care with the intention of adopting [ ] her." Record at 441. (emphasis added). According to the Newmans, by shifting the financial responsibility for L.C. to them, and failing to conduct supervised monthly visits with L.C., WCDSS violated the terms of the Compact. Thus, the argument continues, Maryland's jurisdiction over L.C. lapsed.
We first observe there is nothing in the Compact itself which suggests that a violation of its terms results in a loss of jurisdiction. However, in interpreting the Compact at least one state court determined that if allegations were true that in violation of the Compact the state of Florida had terminated all financial assistance to a minor child shortly after the child had been placed in the state of West Virginia then the court "would be forced to conclude that Florida's jurisdiction over the child had clearly lapsed." State of Fla. DHRS v. Thornton (1990), W.Va., 396 S.E.2d 475, 481. The Newmans rely on Thornton in support of their argument.
Even were we forced to reach a similar conclusion, the facts here do not support the notion that the state of Maryland terminated financial assistance to L.C. The record reveals that either contemporaneous with or *601 shortly after L.C. and her twin brothers were placed in the Newman home in March 1993, WCDSS began sending the Newmans five hundred and thirty five dollars ($535.00) per month in compliance with the terms of an Adoption Assistance Subsidy Agreement. In March 1994, shortly after WCDSS filed its motion for Change of Placement in the Worcester County Circuit Court, WCDSS sent the Newmans a letter indicating the monthly subsidy was being discontinued. The grounds therefore were that the original basis for the subsidy no longer existed, namely there was no longer a sibling group in the Newman home because L.C.'s twin brothers had been removed at the Newmans' request. Over the next several weeks, even as the hearing in this case proceeded along, a flurry of letters and faxes erupted between the Newmans and WCDSS. As a result, WCDSS reversed itself and sent the Newmans a letter dated April 29, 1994 stating in part "the Department will, for the time being, given the current circumstances, continue payments to you in an amount equal to the adoption subsidy." Record at 258. There is no indication in the record exactly when the subsidy was ultimately discontinued. However we presume the same occurred at or near May 28, 1994 at which time L.C. was removed from the Newman home.
The Newmans do not contest the apparent fact that they received from WCDSS over $5,000.00 for the fourteen or so months that L.C. was in their care. Rather, they contend the payments were "merely voluntary, elective, optional, and discretional." Brief of Appellant p. 44. The Newmans' argument is premised on the theory that by entering into the Placement Agreement requiring them to assume complete financial responsibility for L.C., WCDSS (a) violated the terms of the Compact and (b) absolved itself of the statutory responsibility to care for the minor child. Thus, according to the Newmans, any payments made to them by or through the WCDSS were in the nature of a gift. The Newmans' argument is not persuasive.
First, the Compact is essentially a contract between the participating states. McComb v. Wambaugh (1991), 3rd Cir., 934 F.2d 474, 478. And having entered into a contract, a participant state may not unilaterally change its terms. Id. Thus, regardless of its wording, the Placement Agreement which the Newmans entered with WCDSS, did not and could not alter the relationship between the State of Maryland and the State of Indiana as set forth in the Compact. Essentially, WCDSS as the sending agency, continued to have financial responsibility for the support and maintenance of L.C. during the period of the child's placement in the Newman home. See Ind.Code § 12-17-8-1 and Md.Fam.Law Code Ann. § 5-606(a). Second, the record is clear that WCDSS fulfilled its statutorily imposed financial responsibility. By sending the Newmans a monthly subsidy for L.C.'s care, even assuming they were in the nature of a gift as the Newmans contend, WCDSS demonstrated that it had neither abandoned L.C. nor terminated assistance for her as was the case in Thornton. As for the Newmans' claim that WCDSS failed to provide monthly supervised visitations with L.C., (a) the Compact provides no such requirement, and (b) the record shows that Patricia Reidl, a social worker from the Children's Bureau of Indianapolis, made numerous visits to the Newmans' home as well as their school. The visits were discontinued in January 1994 when the Newmans demanded that "all further communications be in writing." Record at 185-186.

D.
Finally the Newmans insist that full faith and credit should not be given the Maryland court order because it violates the public policy of this state. See Ballard v. Board of Trustees (1983), Ind.App., 452 N.E.2d 1023, trans. denied. (The full faith and credit clause does not require one state to apply another state's laws in violation of its own legitimate public policy). According to the Newmans the public policy of this state in protecting the welfare of children was contravened by the Maryland court order because it was entered without a legitimate determination of L.C.'s best interest. The Newmans complain that they were not given an opportunity to be heard by the Maryland court, and instead the court made its decision based upon hearsay submitted by a WCDSS social worker who had not seen or *602 talked to L.C. since she had been placed in the Newmans' home.
The Placement Agreement which the Newmans entered provides among other things that WCDSS "has the right to remove the child at any time prior to adoption should the Department of Social Services consider it to be in the child's best interest." Record at 12. Implicit in the Compact and as specifically set forth in the agreement, WCDSS as L.C.'s legal guardian had the authority to determine in the first instance whether remaining in the Newman home was in L.C.'s best interest. By filing a motion for Change of Placement with the Maryland Circuit Court, WCDSS obviously concluded that remaining in the Newman home was not in L.C.'s best interest. That the court entered an order granting the motion does not demonstrate the state of Maryland's policy regarding a child's best interest is any different than this state's own public policy. WCDSS stood before the court as L.C.'s legal guardian and there is no indication in the record before us that L.C.'s court appointed counsel objected to the WCDSS motion. In sum, we do not agree with the Newmans that the Maryland court order violated the public policy of this state.
A judgment from a sister state which is regular and complete on its face is presumed valid, and one who attacks the jurisdiction of a court from a sister state which issued the judgment must rebut that presumption. Omni Micro, Inc. v. Hyundai Electronics America (1991), Ind.App., 571 N.E.2d 598. In this case the Newmans failed to rebut that presumption. Accordingly, the trial court properly gave full faith and credit to the order of the Maryland Circuit court. We therefore affirm the judgment.
JUDGMENT AFFIRMED.
SHARPNACK, C.J., and BARTEAU, J., concur.
NOTES
[1] "Exparte In The Matter Of A Petition For Guardianship With The Right To Consent To The Adoption Of [L.C.]." Record at 449.
[2] Modeled after the Federal Rule, and similar to Trial Rule 24 of the Ind.Rules of Procedure, Maryland Rule 2-214 INTERVENTION provides in relevant part:

(a) Of Right. Upon timely motion, a person shall be permitted to intervene in an action:
(1) when the person has an unconditional right to intervene as a matter of law;
(2) when the person claims as interest relating to the property or transaction that is the subject of the action, and the person is so situated that the disposition of the action may as a practical matter impair or impede the ability to protect that interest unless it is adequately represented by existing parties.
(b) Permissive.
(1) Generally.Upon timely motion a person may be permitted to intervene in an action when the person's claim or defense has a question of law or fact in common with the action.
* * * * * *
(c) Procedure. A person desiring to intervene shall file and serve a motion to intervene.
[3] At oral argument conducted December 1, 1995, the Newmans maintained the Maryland Circuit Court lacked subject matter jurisdiction because it had no personal jurisdiction. However, the two are not the same and are analyzed differently. "Subject matter jurisdiction" is the power of a court to hear and adjudicate a particular class of cases. Putnam County Hospital v. Sells (1993), Ind.App., 619 N.E.2d 968. The issue of subject matter jurisdiction is resolved by determining whether the claim involved falls within the general scope of authority conferred on the court by state Constitution or by statute. Id. Under Md.Fam.Law Code Ann. § 1-201, an equity court, such as the Worcester County Circuit Court, has general jurisdiction over custody or guardianship of a minor child. Further, courts have subject matter jurisdiction without reference to any particular parties. Pivarnik v. Northern Indiana Public Service Co., (1994), Ind., 636 N.E.2d 131.